The judgment entered in the County Court is affirmed.

JOHN NATIVO, PLAINTIFF-RESPONDENT, v. CITY OF HACKENSACK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT, AND CIRCULATION ASSOCIATES, INC., A CORPORATION OF NEW YORK, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 17, 1962—Decided October 23, 1962.

Before Judges CONFORD, GAULKIN and KILKENNY.

*Mr. Marvin H. Gladstone* argued the cause for appellant (*Mr. Gladstone* on the brief; *Mr. Walter H. Jones,* attorney).

*Mr. Ralph W. Chandless* argued the cause for respondent (*Messrs. Chandless, Weller & Kramer,* attorneys).

*Mr. George A. Brown* appeared for the City of Hackensack.

The opinion of the court was delivered by

KILKENNY, J. A. D.   This is an appeal by Circulation Associates, Inc. (hereinafter "Circulation") from a summary judgment entered in the Superior Court, Law Division, setting aside a sale of lands owned by the defendant City of Hackensack (hereinafter "city") and sold by it to Circulation. The city does not appeal and takes no position herein, being willing to abide by the decision of this court.   Plaintiff sued to set aside the sale as a taxpayer of the city.

On September 16, 1960 one Joseph Novotny offered in a writing addressed to the city to make a minimum bid of $12,000 per acre for the purchase of Lot *38* in Block 308 B, consisting of 9.48 acres, provided the property would remain subject to its then existing zoning as a C-1 zone.   As an evidence of good faith, Novotny deposited with his said proposal the sum of $5,000.   The zoning ordinance then permitted in a C-1 zone—a limited commercial zone—residential buildings, including multiple-family dwellings, as well as structures for light industry and general business purposes.

On October 18, 1960, without having acknowledged

Novotny's offer, the city council adopted a resolution authorizing the public sale on November 1, 1960 of lot *38 B* in Block 308 B, generally described in the resolution and referred to therein as containing approximately 5.2 + acres, the minimum acceptable price for this property being specified as $13,550 per acre. As we understand, the city had subdivided lot *38*, separating the 9.48 acres into two parcels because part of the entire acreage was park land that could not be sold. Lot *38 B* represented the part that could be sold as no longer needed for public use, pursuant to *N. J. S. A.* 40:60–26.

The resolution authorizing the sale provided that the sale would be made "subject to the following conditions" pertinent here:

"(1) That the purchaser erect upon the land non-residential structures to cost not less than $100,000 exclusive of the cost of piling and preparing the land for said structures within two years from the date of delivery of the Deed; such structures to be erected in accordance with local ordinances.

(2) The purchaser shall enter into an agreement with the City of Hackensack in fulfillment with the conditions imposed.

\*          \*          \*          \*          \*          \*          \*          \*

The City reserves the right to reject any or all bids." The published notice of sale set forth the aforesaid conditions.

On October 27, 1960 Novotny's attorneys wrote a letter, addressed to the mayor and council of the city, referring to Novotny's earlier offer and the resolution of October 18, 1960, particularly condition (1) above quoted, and pointed out that dwellings and apartment houses were permitted in a C-1 zone. They sought advice prior to the date fixed for sale as to whether their understanding of the condition was correct. They phrased their interpretation of the condition as follows:

"We therefore, take it that what the condition intends is that not less than $100,000.00 shall be spent on a nonresidential structure and that as to such portion of the property as may not be required for such nonresidential structure all of the uses permitted by the zoning ordinance will be allowed.

We also understand that the condition will be a personal obligation on the part of a purchaser and will not run with the land."

The aforesaid letter and the inquiry therein were not answered in any way prior to the time of sale. However, it was the subject of an inter-office communication on October 28, 1960 from the city's building inspector to the city manager, wherein the building inspector agreed with the interpretation of Novotny's attorney, advising "that once the $100,000.00 structure is erected, any remaining lands could be then used for any legal use under the Zoning Ordinance." In addition, the building inspector expressed the belief that the stated conditions should run with the land.

The public sale was conducted at a regular meeting of the mayor and city council on November 1, 1960. The minutes of the meeting show that the city clerk read the public notice of sale and then the mayor announced:

"The minimum bid is $70,400 based upon the $13,550 per acre factor. The sale, insofar as the conditions set forth in the advertisement which states that non-residential structures at a cost of not less than $100,000.00 must be erected within two years, it is the intention of this Council that there shall be no residential structures built; and restrictions against use shall run with the land."

One of the members of the council referred to the opinion of the building inspector and stated that he "would like to ask the opinion of the City Attorney." Thereupon, the city attorney responded by saying:

"I think that the statement the Mayor made complies with the advertisement and even if it doesn't, it has been announced here this evening, before the sale takes place that there is greater restriction than that which might otherwise be interpreted in the advertisement. Accordingly, I am of the opinion that the sale to be held now would be valid * * *."

There followed a colloquy between Novotny's attorney and the city attorney, in which the latter iterated his interpretation of the condition and stressed the mayor's declaration, stating that "it is the intention to restrict the sale so that no structure for residential purposes can be erected upon the entire premises." Novotny's attorney protested that the re-

quired nonresidential structure would require only one acre and "we are willing to go along with the structure to cost not less than $100,000, but there are four acres left and we want to use it for residential use which is permissible. By depriving us from bidding we would have to attack the whole sale."

The city attorney then reiterated that the tract being sold must be nonresidential. No member of the council took issue with the declarations by the mayor and the city attorney that such were the conditions of the sale. The mayor called for any further objections and, when there was no response, the city clerk reread the public notice of sale and Circulation by its attorney submitted a bid of $70,400 net to the city. No other bids having been received, a resolution was forthwith unanimously adopted accepting Circulation's bid and directing the mayor and city clerk to deliver a deed conveying the title upon payment of the bid price and expense of sale, "subject to the conditions of sale as set forth in the advertised notice and applicable local ordinances."

Plaintiff's complaint in lieu of prerogative writs to set aside the sale was filed on November 28, 1960. While the action was pending, the city delivered its deed to Circulation, dated December 15, 1960. That deed contained these pertinent provisions:

"This conveyance shall be subject also to the following covenants and restrictions which shall run with the land and be binding upon the party of the second part. its successors and assigns but shall only inure to the benefit of the Party of the First Part:

1. There shall be constructed upon the premises within two years from the date of the final determination of the law suit pending between John Nativo and the City of Hackensack concerning the legality of the within sale and conveyance, a structure or structures the aggregate cost of which shall not be less than $100,000.00.

2. No structure or structures shall be used primarily for residential purposes.

3. The cost figure referred to in Item 1 above shall not include the expense of any necessary piling and preparation of the land for development.

4. The Party of the Second Part shall be required to furnish to the Party of the First Part any and all plans, specifications, architect

drawings, contracts and cost sheets at any time before and after the completion of the structure or structures in question until released by the Party of the First Part.

5. The Party of the First Part shall have the duty and obligation to release the Party of the Second Part from any and all obligations hereunder after the completion and fulfillment of the condition as to the construction of the required structure or structures.

6. In the event the Party of the Second Part, its successors or assigns fails to erect the structure or structures as aforesaid, then the Party of the First Part shall have the right to collect from the Party of the Second Part, as liquidated damages, a sum of money which shall be equal to the municipal tax which would be levied against the structure or structures if erected as required and possessing a market value of $100,000.00, *i.e.* $100,000 × common ratio of assessment × yearly tax rate; said sum of money shall be payable to the City Treasurer at the same time, in the same manner and with the same penalties and enforcement provision as though it was in fact a municipal tax liability."

In setting aside the sale, the Law Division rested its opinion on two main factors.

First, the trial court determined that "the advertisement did not set forth clearly and definitely, nor at length, the limitations or restrictions on the use that may be made of the land offered for sale." While the purchaser was required to erect on the land nonresidential structures to cost not less than $100,000, "the advertisement did not expressly restrict [thereafter] the erection on the land of any structure permitted by the City's zoning ordinance."

Second, it found that the published notice of sale was not clear and definite as to whether the land was to be sold and conveyed subject to a condition subsequent that nonresidential structures be erected on the land within two years, or whether the provision for the erection of such structures was to be merely a covenant in the deed conveying the land. It observed that "it was essential for a prospective bidder to know whether the failure to fulfill a condition of the sale would constitute a ground for the forfeiture of the land to be conveyed, or would be merely a breach of contract."

We agree with the conclusion reached by the Law Division that "the advertisement of sale did not set forth at length the

restrictions on the use to be made of the land and the conditions of sale, nor were they set forth fully, particularly, and definitely as required by law." We find that the expression of the condition as to the use to be made of the land was patently ambiguous to a degree which resulted in the advertisement failing to set forth the restrictions at length. No one reading the advertisement could have any assurance as to whether, after erecting a nonresidential structure costing at least $100,000, he would be privileged thereafter to erect residential structures on the remainder of the land. It was essential for a bidder to know this; and omission of that information was an omission of an essential term of the restrictions. For that reason, the sale was properly set aside.

*N. J. S. A.* 40:60–26 authorizes municipalities to sell at public sale after due public notice lands not needed for public use and provides:

"The governing body may also impose any restrictions on the use to be made of such land and any conditions of sale as to buildings or structures to be erected thereon, or as to the type, size, or other specifications of such buildings or structures, * * * and the time within which such conditions shall commence or be concluded, or any other conditions of sale in the manner and to the same extent as any other vendor of real estate, * * *; *provided*, however, that any conditions for the payment of the consideration upon credit and the restrictions on the use to be made of the land and the conditions of sale shall be set forth *at length* in any advertisement of sale hereinabove required." (Emphasis added)

The *proviso* in the above quoted section of the statute was not complied with in the instant case as to the restrictions on use.

"The basic philosophy of our statutes respecting municipal contractual action is that economy must be secured, extravagance forbidden, and opportunities of fraud or favoritism suppressed." *Juice Bar Corp. v. Tp. Committee of Neptune Tp.,* 36 *N. J. Super.* 164, 168 (*App. Div.* 1955). The primary objective of the bidding statutes "is to encourage competition for the benefit of the public purse. * * * Basic in the service of this purpose is the necessity of having

a common standard and definite and precise specifications upon which to found corporate action." *Greenberg v. Fornicola*, 65 *N. J. Super.* 104, 109 (*App. Div.* 1961), reversed on other grounds 37 *N. J.* 1 (1962). See, too, *Lieberman v. Neptune Twp.*, 50 *N. J. Super.* 192, 198 (*App. Div.* 1958); and *Jersey City Merchants Council v. Jersey City*, 71 *N. J. Super.* 156 (*App. Div.* 1961), certif. granted *Jersey City Merchants Council v. Robinson*, 37 *N. J.* 87 (1962).

Circulation argues that the advertised notice was clear and unambiguous. It maintains that the condition was set forth "at length" in that its only requirement was that the successful bidder must erect within two years nonresidential structures to cost not less than $100,000, after which the purchaser could make any use of the remaining land permitted by the zoning ordinance. But Circulation's representative at the sale, an attorney, apparently agreed at that time with the Mayor's version, and its later acceptance of a deed which provided that there may not be on the land any structures primarily for residence is not consistent with its present view that the advertised condition did not embrace such a limitation upon use. Circulation also contends that the statements made by the mayor and city attorney at the time of the sale as to what the governing body intended by the language of the condition had no legal effect because these officials had no authority to vary the condition as expressed in the public notice of sale.

Our view that the expression of the condition as to the use of the land was ambiguous finds support in the fact that the city officials did not agree among themselves as to its meaning. The building inspector gave one interpretation in his advice to the city manager which was contrary to what the Mayor and the city attorney publicly declared was the intended meaning. The wording of the condition lacked clarity, not so much in what it said, but in what it left unsaid. This led Novotny, a prospective bidder, and his attorneys, in the exercise of justifiable and understandable caution, to seek a clarification.

In *Samuel v. Wildwood*, 47 *N. J. Super.* 162, 170 (*Ch. Div.* 1957), the court said:

"Where the contest of an advertisement antedates the sale, the court is necessarily restricted to a consideration of the context of the cold print. However, where, as here, a contest post-dates the sale and the confirmation thereof by the municipality, the advertisement must be considered in the light of the actual facts as they occurred. Inferences as to the efficacy of the advertisement may be drawn from the conduct of all of the parties to ascertain whether there was, in actuality, a common norm or standard. In *Armstrong v. Board of Com'rs of City of Trenton*, 137 *N. J. L.* 332 (*Sup. Ct.* 1948), the court said:

'The test is the reasonableness of the specification and reasonableness is to be determined by the actual effect, not by the intended effect that existed in the minds of the framers.' "

We are not implying that the mere possibility of an ambiguity in the meaning of published conditions of sale will in every case be sufficient *per se* to invalidate the sale. What we do say is that where the ambiguity or uncertainty is patent, as here, and where the ambiguity relates to subject matter which would be material to a prospective bidder, a valid ground exists for setting aside the sale.

Even if the advertised conditions were as clear as Circulation now says they were and the interpretation of the mayor and council of the conditions was contrary thereto and therefore erroneous, it had the practical effect of preventing at least one prospective bidder, Novotny, from submitting a bid. He was interested in buying the property if he could use for residential development that portion of the land not needed for the nonresidential structures. The mayor and the city attorney, with at least the tacit consent of the council, told Novotny that the land could not be used for residential purposes.

The city had the power to restrict its use beyond that permitted in the zoning ordinance, just as a private vendor might, provided such greater limitation upon use was clearly and intelligibly expressed in the notice of sale. In this case it was not.

The conditions of sale set forth in the published notice thereof may not be effectively varied or validly supplemented by an oral declaration at the sale of some new condition. *Buckley v. Mayor, &c., of Jersey City,* 105 *N. J. Eq.* 470 (*Ch.* 1930), affirmed o. b. 107 *N. J. Eq.* 137 (*E. & A.* 1930). And where the language of the published condition is patently ambiguous in character and gives rise to reasonably conflicting opinions as to its meaning, as here, the purpose of the statute requiring that conditions imposed upon the sale of public lands shall be set forth at length is not achieved and the deficiency may not be supplied or the ambiguity cured by statements made at the sale. The confusion engendered by the failure to articulate clearly in the notice of sale the intention of the governing body tends to minimize the number of bids received and thus lessen competition, and to maximize the possibility of favoritism. The public interest requires in such a case that the sale be set aside.

When the published notice of sale of public lands specifies that the sale will be made "subject to the following *conditions,*" thereafter expressed, while it may not be essential, it would certainly be advisable and avoid litigation, if the governing body would state plainly in the notice of sale that a breach of the conditions will effect a reverter of title, if such was the intended meaning. Conversely, if the so-called "condition" is to be a mere "covenant" for whose breach the remedy will be some form of liquidated damages or give rise to injunctive relief, we recommend that its character should be made plain. Of course, the intention of the parties is controlling in such cases, but the tendency of our courts has been to construe "conditions" as mere "covenants" or restrictions for whose breach there is no right of reverter, where there is a reasonable doubt as to the intended meaning. *Carpender v. New Brunswick,* 135 *N. J. Eq.* 397 (*Ch.* 1944); *Riverton Country Club v. Thomas,* 141 *N. J. Eq.* 435, 440 (*Ch.* 1948); *Oldfield v. Stoeco Homes, Inc.,* 26 *N. J.* 246, 257–258 (1958); *Lehigh Valley R. R. Co. v. Chapman,* 35 *N. J.* 177, 188 (1961).

We find it unnecessary in this case to determine whether the published "conditions" were mere "covenants," or whether the indefiniteness of the advertisement in that regard, standing alone, would have been fatal, or whether the city's inclusion in the deed of the unadvertised provisions as to a release and liquidated damages constituted a failure on its part to set forth the conditions "at length" in the notice of sale.

Because of the ambiguity in the condition contained in the published notice of sale, as to the limitations upon the use of the property, the sale was properly set aside.

The judgment is affirmed.

CONFORD, S. J. A. D. (concurring). I vote to affirm on the ground that the terms of the advertisement of sale relating to the restriction on the use of the property were so patently ambiguous on their face as to fail to inform a bidder whether he had the right to build residential structures on the land after building nonresidential structures costing at least $100,000. This, in my judgment, violated the intent of the statute that such use restrictions be set forth "at length" in the advertisement of sale.