56 N.J. Super. 296 (1959)
152 A.2d 860
ABRAHAM MAYER AND BARNEY MAYER AND THE OSBORNE & MARSELLIS CORPORATION, A NEW JERSEY CORPORATION, PLAINTIFFS-RESPONDENTS,
v.
BOARD OF ADJUSTMENT OF THE TOWN OF MONTCLAIR, IN THE COUNTY OF ESSEX, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 1959.
Decided June 26, 1959.
*298 Before Judges GOLDMANN, FREUND and HANEMAN.
*299 Mr. Samuel Allcorn, Jr. argued the cause for appellant.
Mr. Samuel Rosenblatt argued the cause for plaintiffs-respondents Abraham Mayer and Barney Mayer (Mr. Nicholas H. Hagoort, Jr., of counsel).
Mr. Newton H. Porter, Jr. argued the cause for plaintiffs-respondents The Osborne & Marsellis Corporation (Messrs. Porter & Hobart, attorneys).
The opinion of the court was delivered by HANEMAN, J.A.D.
Defendant appeals from a judgment of the Law Division ordering it to grant plaintiffs a variance on conditions therein imposed by the trial judge.
Plaintiffs Mayer own and operate an automobile wrecking business at 2 Bloomfield Avenue, Montclair, and at 988 Bloomfield Avenue, Glen Ridge. These addresses are on the southwest side of Bloomfield Avenue in the vicinity of the premises here involved. The Mayers have contracted with plaintiff, The Osborne & Marsellis Corporation, to purchase from the latter a tract of land located near their present place of business, but on the opposite, or northeast side, of Bloomfield Avenue, and entirely within the Town of Montclair.
The northeasterly side of Bloomfield Avenue is strip zoned for C-1 commercial use under the Montclair zoning ordinance. The strip along the northeasterly side of Bloomfield Avenue is 100 feet deep and reaches from the Glen Ridge town line approximately 2,200 feet into Montclair.
The area of the tract in question is approximately 2.1 acres. It is located in the Montclair M-1 use zone, except for a quadrangular section which fronts on Bloomfield Avenue for a distance of approximately 75 feet. This latter section lies within the C-1 use zone strip.
Bloomfield Avenue, at the frontage of the property in question, bridges a stream known as Toney's Brook, which is used by the municipality for drainage. As a result, the *300 Bloomfield Avenue frontage of this property (its southerly boundary) is approximately 35 feet lower than the elevation of the roadway. The westerly side of the property is bounded by the right of way of the Lackawanna Railroad; the easterly side by Toney's Brook; and the northerly side by commercial property. Access to the tract is from Bay Street, along its easterly boundary, via a driveway approximately 37 feet in width. This entrance is the only direct access to the property from a public street. The present uses in the neighborhood include residential, commercial and industrial uses.
The Mayers applied to the board for a use variance recommendation under N.J.S.A. 40:55-39(d), there being some question whether they could properly conduct their business on these premises. The board denied their application. They then filed a complaint in lieu of prerogative writs and secured the judgment under appeal. The matter was submitted to the trial court, with briefs, on the record before the board.
After the matter was submitted to the trial court, Montclair amended § 23 (44) of its M-1 zone ordinance, striking therefrom a phrase which would permit the board of adjustment to grant a permit to use lands in that zone for open storage. Also during this period, the board moved to enlarge the record to include a letter from the borough attorney of Glen Ridge to the New Jersey Air Pollution Control Commission, in which the town, through its attorney, registered a complaint concerning a smoke nuisance allegedly originating from plaintiffs' present place of business. The trial court denied the motion to enlarge.
The board argues that (1) the court could not pass upon the validity of the ordinance because the town was not a party to the action; (2) any objection to the validity of the Montclair zoning ordinance, § 23 (44) is moot, because the amendment cured the defect; (3) the operation of an automobile wrecking business is prohibited by the ordinance in both C-1 and M-1 zones; (4) the special reasons advanced *301 by plaintiffs in support of their request for the recommendation of a variance are not valid reasons; (5) plaintiffs failed to prove that the business would "secure safety from fire, * * * promote health and general welfare, * * * conserve property values, * * * etc."; (6) the use of the premises would not be a valid continuance of the present non-conforming use; (7) it was error to grant a variance upon a condition imposed by the court.
Plaintiffs respond: (1) their business is not the operation of a junk yard and is therefore not prohibited under § 23 (44) M-1 use zone restrictions; (2) § 23 (44) as amended is void because ambiguous and bears no relation to the statutory purpose of zoning; (3) legal "special reasons" were proved; (4) their business is not offensive for the reasons expressed in § 23 (43).
The issue of the invalidity of the zoning ordinance was not raised by plaintiffs' pleadings nor was it included as an issue in the pretrial order. More important is the fact that the Town of Montclair was not a party to the suit. The municipality is a necessary and indispensable party to an action in which its zoning ordinance is sought to be invalidated. The failure to join the municipality precludes any argument on the invalidity of the zoning ordinance. Cobble Close Farm v. Bd. of Adjustment of Middleton Tp., 10 N.J. 442, 445 (1952).
In addition, the amendment cured the defect complained of. The ordinance is viewed as of the time when the court is called upon to act. San-Lan Builders, Inc. v. Baxendale, 28 N.J. 148 (1958); Roselle v. Mayor and Council of Borough of Moonachie, 48 N.J. Super. 17, 21 (App. Div. 1957); 49 N.J. Super. 35 (App. Div. 1958).
Is the automobile wrecking business prohibited by § 23 (16), (43) or (44) (the M-1 use regulations) of the Montclair zoning ordinance?
Section 23 (16) prohibits the use of premises in the M-1 zone for a business devoted to the "incineration or reduction of offal, garbage or refuse." Clearly, the disposal *302 of trash or garbage is not the purpose of this business. The disposal of waste is an incidental burden to the Mayer enterprise and to every other business endeavor, but only a few are engaged in the business of waste disposal.
Section 23 (44) prohibits the use of premises in the M-1 zone for a business which would involve "any open land use such as yards for the storage of material of any kind, junk yards or the like." The language is not clear. Does it prohibit the open storage of materials of any kind, plus junk yards and similar businesses or does it simply prohibit junk yards?
The construction of municipal ordinances is, generally, governed by the same rules as are applicable to the construction of statutes. Our search, of course, is to discover and effectuate the local legislative intent as expressed in the ordinance under review. Wright v. Vogt, 7 N.J. 1, 5 (1951); Guill v. Mayor and Council of City of Hoboken, 21 N.J. 574, 587 (1956). The rule of ejusdem generis serves as a helpful guide in discovering the legislative meaning. That rule embodies "the principle grounded in grammar, logic and reason that associated words and phrases may be looked to for the significance of doubtful words, and where general words follow particular words, in an enumeration describing the subject, the general words are construed to embrace only objects similar in nature to those enumerated by the antecedent specific words." In re Armour's Estate, 11 N.J. 257, 273 (1953); Salomon v. Jersey City, 12 N.J. 379, 389 (1953). The sense of the ordinance is gathered from the whole expression and the meaning of words may be indicated or controlled by those with which they are associated. Martell v. Lane, 22 N.J. 110, 117 (1956). Noscitur a sociis, summarizes the rule of language and law that the meaning of words may be indicated or controlled by those with which they are associated. Josefowicz v. Porter, 32 N.J. Super. 585, 591 (App. Div. 1954). This case presents a situation well adapted to the application of these two rules of construction.
*303 A reasonable reading of § 23 (44) leads to the conclusion that what is, in fact, prohibited is the classic junk yard and the concomitant use of the surrounding premises for outside storage. Thus clarified, the ordinance does not prohibit plaintiffs' business. Theirs is a specialty field, not the junk yard business, as it is commonly known. See Eastern Scrap & Salvage Corp. v. Burns, 5 N.J. Super. 616 (Law Div. 1949); Grace Iron & Steel Corp. v. Ackerman, 123 N.J.L. 54 (Sup. Ct. 1939).
Section 23 (43) prohibits in the M-1 zone any trade or industry not specifically mentioned elsewhere "that is noxious or offensive by reason of the emission of odor, dust, smoke, gas or noise." The inquiry is whether the business is "noxious or offensive" for any of the stated reasons. The proof is that there is some smoke and noise associated with the dismantlement of the wrecked vehicles. But there is no proof that this is noxious or offensive.
Defendant reasons that the ordinance is presumed valid and that plaintiffs have the burden of proving the validity of the special reasons upon which a recommendation could be granted. That reasoning is proper for the portion of the lands which lie within the C-1 zone but not for that portion which lies in the M-1 zone. In the M-1 industrial zone we are concerned only with the meaning of the language employed in § 23 of the ordinance. The proper view is that, in this broad zone, all uses would be permitted unless specifically excluded. Section 23 (43) is ambiguous and needs to be interpreted to determine what it is that is prohibited. It cannot be considered by itself. What has gone before is as important to its meaning as are the words of the particular section. A review of the 42 specific businesses which are mentioned in the preceding portions of § 23 gives a proper perspective to the meaning of § 23 (43). Applying the rule of ejusdem generis, it becomes clear that § 23 (43) prohibits any other business like the 42 mentioned which is "noxious or offensive by reason of the emission of odor, dust, smoke, gas or noise." Plaintiffs' business is not one of those *304 mentioned nor is it like any of those. Thus, there is no question that plaintiffs' business is a proper one for the M-1 zone and that no variance was necessary in order for them to operate their business in that zone.
This brings us to a consideration of the application for a variance and the proofs as they relate to the portion of the premises in the C-1 zone. Here a variance recommendation is necessary because the lands within the zone are restricted against the contemplated use. N.J.S.A. 40:55-39(d). Section 22(e), which forbids the use of C-1 premises for a "carting, express, hauling or storage yard," apparently bars the use here proposed. Section 22 (1) is clearly a bar to the proposed business without a variance first obtained. The use there prohibited is that of "storage or baling or [sic] scrap, paper, rags, old iron or junk."
This portion of the lands in question lies within the 100-foot strip zone bordering Bloomfield Avenue. The strip is arbitrary  a straight line. It may be contrasted with the strip zone along the southwesterly side of Bloomfield Avenue where plat variations are taken into consideration, resulting in a strip zone of varying depth. At the particular place in issue, Bloomfield Avenue rises 35 feet above the level of the ground  a bridge or causeway has been constructed over the storm drain at Toney's Brook  and the roadway does not return to grade until it is past the boundaries of this property. Certainly this is a property presenting special reasons for a use variance. Because of its peculiar topography, a variance would not tend to destroy the validity of the use plan or use ordinance. On one side it is bounded by the railroad tracks, on the other by Toney's Brook and a sharp incline back to grade. Access to Bloomfield Avenue would be a most impractical, if not an impossible, undertaking. The only proper use of the property is to permit it to be used in the business to which the larger remaining part of the tract is to be devoted. Access could then be had to the public roadway from that larger portion of the tract which is in the M-1 zone. To do otherwise would *305 amount to a taking of property without due process. The tract is one which because of its exceptional topographic condition recommends itself, in law, to the relaxation of the letter of the zoning ordinance.
The trial court erred in directing defendant to grant a variance on the condition that they do not burn the refuse caused by their operation. The order projects the judicial rule into the local legislative process.
The trial court ordered the board to "perform all acts necessary to approve the right of plaintiffs to have the relief sought under the complaint," i.e., to have the action of the board reversed and to direct that a variance be granted to permit the requested use. This, neither the trial court nor the board can do. The ultimate decision rests with the town council. N.J.S.A. 40:55-39(d).
The trial court properly denied the motion to expand the record to include the letter of the borough attorney of Glen Ridge to the New Jersey Air Pollution Control Board. It was admittedly hearsay. It was not a fact upon which the board relied in reaching its conclusion, coming some six months subsequent thereto, and the smoke nuisance, if such were the fact, has no basis in the evidence adduced before the board.
The judgment appealed should be affirmed insofar as the reversal of the board's action is concerned, but for the reasons herein stated. The board is directed to recommend a variance to the governing body for the portion of these lands which lie within the C-1 strip zone.