468 F.Supp. 737 (1979)
MASON CITY CENTER ASSOCIATES and Beaver Farms, Inc., Plaintiffs,
v.
The CITY OF MASON CITY, IOWA, Kenneth Kew, Virgil DeVary, Dr. Stanley Romans, Marlys Shima, Roger Pedelty, Larry Jarvill, Harlan Johnson, Holmen Development Company and the Ericson Development Co., Inc., Defendants.
No. C 78-106.
United States District Court, N. D. Iowa, Cedar Rapids Division.
April 5, 1979.
*738 *739 Stephen J. Holtman, Simmons, Perrine, Albright & Ellwood, Cedar Rapids, Iowa, George F. Karch, Jr., Thomas J. Collin, Thompson, Hine & Flory, Cleveland, Ohio, for plaintiffs.
B. Michael Dunn, Mason City, Iowa, Stuart L. Finney, Minneapolis, Minn., for defendants; H. Richard Smith, Paul F. Ahlers, Edward W. Remsburg, James E. Cooney, Des Moines, Iowa, of counsel.

ORDER
McMANUS, Chief Judge.
This matter is before the court on defendants' resisted joint motion to dismiss for failure to state a claim, filed January 15, 1979. Denied.
This action for injunctive relief and damages is predicated upon alleged antitrust violations.[1] Plaintiffs are Mason City Center Associates (Center Associates), an Ohio limited partnership engaged in the organization and planning of a regional shopping center on the west side of Mason City, Cerro Gordo County, Iowa (West Side Center); and Beaver Farms, Inc. (Beaver Farms), an Iowa corporation owning title to the land upon which Center Associates plans to construct the aforementioned West Side Center. Defendants are the City of Mason City, a municipal corporation existing under the laws of the State of Iowa; Kew, DeVary, Romans, Shima, Pedelty, Jarvill, and Johnson  each members of the Mason City City Council (Council); Holmen Development Co. (Holmen) and The Ericson Development Co., Inc. (Ericson), both Minnesota corporations engaged in the organization and planning of a regional shopping center in downtown Mason City (Downtown Center).
A motion to dismiss for failure to state a claim is the proper method for testing the legal sufficiency of a complaint. 2A *740 Moore's Federal Practice, ¶ 12.08 at 2265-66 (2d ed. 1975). The motion should not be granted unless it appears beyond doubt that the plaintiffs could prove no set of facts in support of their claim which would entitle them to relief. Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Stifel, Nicolaus & Co. v. Dain, Kalman & Quail, Inc., 578 F.2d 1256, 1260 (8th Cir. 1978); Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974). In ruling on the motion the court must construe the complaint liberally, taking the alleged facts as true and entitling the plaintiffs to all reasonable inferences in their favor that may be drawn from the alleged facts. Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); Stifel, Nicolaus & Co. v. Dain, Kalman & Quail, Inc., supra.
Plaintiffs' complaint alleges the following specifically relevant facts. Holmen and Ericson have entered into an agreement with the City to organize and plan the Downtown Center upon the express condition that the City prevent any person or firm from planning or constructing a regional shopping center that would compete with the Downtown Center. Plaintiff Center Associates seeks to construct its West Side Center on a 35-acre tract located on the west side and within the limits of Mason City. This tract is owned by Beaver Farms and is presently zoned "A-Agriculture and Mining."
The West Side Center development cannot be undertaken unless the Beaver Farms tract is rezoned to "G-Business." Beaver Farms applied for such a rezoning, which was denied by the Mason City Planning and Zoning Commission. The rezoning denial was affirmed by the City Council. Plaintiffs further allege that the Council members denied the rezoning pursuant to and in furtherance of their agreement with Holmen and Ericson to exclude competitive shopping center developments from Mason City, and that the agreement has effectively granted Holmen and Ericson "a perpetual veto power over all applications for rezoning of property in Mason City . . . intended to be used for a regional shopping center . . . [in] compet[ition] with the Downtown Center." As a result of these actions plaintiffs have been effectively prevented from pursuing their plan to build the West Side Center. Upon these and other allegations,[2] plaintiffs base their contentions that defendants have violated federal and state antitrust statutes, and the Iowa common law relating to zoning.[3]
In moving for dismissal for failure to state a claim, defendants contend that their action in refusing to rezone is protected as a matter of law by the "state action" exemption to the federal antitrust laws, which the United States Supreme Court delineated in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) and its progeny. Additionally, they contend that to the extent the *741 complaint alleges concerted efforts to induce governmental action resulting in a restraint of trade or in a monopoly, it nonetheless fails to state an actionable violation of the antitrust laws because of the "Noerr-Pennington" political-speech immunity doctrine. See, United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Finally, defendants seek dismissal of the pendent state law counts on grounds that the Iowa Competition Law must be construed in harmony with the federal antitrust laws and that the court should exercise its discretion under pendent jurisdiction and dismiss counts 5 and 6, citing United Mine Workers v. Gibbs, 383 U.S. 715, 725-26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) in support.
The court may assume for present purposes that defendants' actions as alleged would be sufficient to support a claimed violation of the antitrust laws if they were done by virtue of an agreement, combination or conspiracy involving solely private parties.[4]See, Parker v. Brown, 317 U.S. 341, 350, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Thus, the issue to be decided on defendants' motion is the legal one whether defendants are exempted or immune from any antitrust liability by virtue of the Parker "state action" doctrine or the Noerr-Pennington political activity doctrine. Upon the facts alleged the court finds that they are not and the motion will therefore be denied.

State Action
Parker v. Brown involved the validity of a California statute specifically authorizing the establishment of agricultural marketing programs expressly restricting competition among raisin growers and fixing the prices at which the growers could sell their product. The stated purpose of the statute was to conserve California's agricultural wealth and prevent economic waste in marketing the state's agricultural goods. See, Parker v. Brown, 317 U.S., at 346, 63 S.Ct. 307.
The United States Supreme Court assumed that the program would violate the Sherman Act if it had been the product of private agreement. Id., at 350, 63 S.Ct. 307. In upholding the statute, and thereby delineating the so-called "state action" exemption to the Sherman Act, the Court stressed the fact that the program had been established under state legislation and was administered and supervised by a Commission, appointed by the governor and confirmed by the state senate, and of which a state official  the Director of Agriculture  was an ex-officio member. Id., at 346, 63 S.Ct. 307. Thus, the State of California directly involved itself as sovereign in what the Court construed was the state's legitimate sphere of regulation. See id., at 350-52, 63 S.Ct. 307. Indeed, the Court emphasized that it was not faced with a question "of the state or its municipality becoming a participant in a private agreement or combination by others for restraint of trade." Id., at 351-52, 63 S.Ct., at 314 (emphasis added).[5]
As one United States Circuit Court of Appeals noted about the Parker decision, "the [Supreme] Court's emphasis on the extent of the state's involvement precludes the facile conclusion that action by any public official automatically confers exemption." George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., 424 F.2d 25, 30 (1st Cir.), cert. denied, 400 U.S. 850, 91 S.Ct. 54, 27 L.Ed.2d 88 (1970). This point  that a state's subdivisions and agencies are not automatically exempt from application of the federal antitrust laws  seems to have *742 been seconded in subsequent Supreme Court opinions interpreting Parker. See City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 408, 411-13 & n.41, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). Compare Goldfarb v. Virginia State Bar, 421 U.S. 773, 790-91, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) with Bates v. State Bar of Arizona, 433 U.S. 350, 359-62, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).
This is not to say, however, that municipalities may not at any time avail themselves, as agents of the state, of the "state action" exemption set forth in Parker. They may do so when their anticompetitive conduct is engaged in "pursuant to state policy to displace competition with regulation or monopoly public service" and merely reflects such state policy. City of Lafayette v. Louisiana Power & Light Co., supra, 435 U.S., at 413, 98 S.Ct. 1123. In addressing this more-limited "state policy" consideration, however, the Supreme Court cases make it clear that:
The threshold inquiry in determining if an anticompetitive activity is state action of the type the Sherman Act was not meant to proscribe is whether the activity is required by the State acting as sovereign. . . . It is not enough that . . . anticompetitive conduct is "prompted" by state action; rather, anticompetitive activities must be compelled by direction of the State acting as a sovereign.
Goldfarb v. Virginia State Bar, supra, 421 U.S., at 790-91, 95 S.Ct., at 2015. Accord City of Lafayette v. Louisiana Power & Light Co., supra, 435 U.S., at 409-10, 98 S.Ct. 1123 (plurality opinion), 418, 98 S.Ct. 1139 (Marshall, J., concurring), 425, 98 S.Ct. 1139 (Burger, C. J., concurring).
Additionally, other considerations of special significance are whether or not the state policy requiring the anticompetitive restraint is specifically part of a comprehensive regulatory system; and is clearly articulated, affirmatively expressed and actively supervised by the state as the policy-maker. City of Lafayette, supra, at 410, 98 S.Ct. 1123. Compare Bates v. State Bar of Arizona, 433 U.S., at 359-60, 362, 97 S.Ct. 2691, with Cantor v. Detroit Edison Co., 428 U.S. 579, 591 n.24, 594 & n.32, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976) and Goldfarb v. Virginia State Bar, 421 U.S., at 790-91, 95 S.Ct. 2004, 44 L.Ed.2d 572.
In moving for dismissal, it is defendants' contention that the Iowa zoning law, Iowa Code ch. 414 (1978), constitutes or incorporates such a policy. The court disagrees. Although zoning statutes assuredly sometimes have anticompetitive effects, it is somewhat fatuous to contend that they inevitably reflect a state's clear and affirmative intent to displace competition with regulation or monopoly public service. See, e. g., Skaggs-Albertson's v. ABC Liquors, Inc., 363 So.2d 1082, 1089 (Fla.1978); Smith v. Zoning Board of Review, 103 R.I. 328, 237 A.2d 551, 554 (1968); Glen Rock Realty Co. v. Board of Adjustment, 80 N.J.Super. 79, 192 A.2d 865, 871 (1963); Pearce v. Village of Edina, 263 Minn. 553, 118 N.W.2d 659, 670-72 (1962); Suburban Ready-Mix Corp. v. Village of Wheeling, 25 Ill.2d 548, 185 N.E.2d 665, 666-67 (1962); In re Lieb's Appeal, 179 Pa.Super. 318, 116 A.2d 860, 865 (1955). Nor can it be said with any assurance that the Iowa zoning statute clearly and affirmatively reflects such an intent or policy.[6]
The zoning statute must be strictly construed. E. g., Anderson v. City of Cedar Rapids, 168 N.W.2d 739, 742 (Iowa 1969). With this standard of strict construction in mind, it is the court's interpretation of the statute that it does not clearly and affirmatively intend displacement of competition with the kind of regulation and monopoly service contemplated by the Supreme Court under the "state-action" doctrine.
*743 In the first place, the Iowa zoning statute does not even require municipalities to set up zoning mechanisms. It merely permits and empowers them to do so should they choose to. Iowa Code § 414.1 (1978). Second, where a municipality does elect to zone, the Iowa statute does not require or compel it to make zoning decisions for the express or even implied purpose of excluding, restraining or otherwise limiting competition. Finally, the state statute does not set up any distinct agency or mechanism for active supervision of the cities' zoning procedures by the state as sovereign policy-maker.
Nor can the court find as a further matter that in enacting its zoning statute the Iowa legislature even contemplated, much less mandated, that its municipalities would enter into anticompetitive agreements with private developers in connection with exercise of their zoning powers. See, City of Lafayette, 435 U.S., at 415, 98 S.Ct. 1123 (plurality opinion), 425 n.6, 98 S.Ct. 1143 (Burger, C. J., concurring); Cantor, 428 U.S., at 596-97, 96 S.Ct. 3110. At best, the Iowa zoning law is totally neutral on the question whether the municipalities should or should not enter into such agreements, and then use their zoning powers in furtherance thereof, so as to exclude competitive elements from the relevant market. Indeed, the more probable view is that the State would intend its municipalities to exercise their zoning powers in a manner consistent with the bounds imposed by the federal antitrust laws and the strong national policy favoring competition those laws embody. Compare, City of Lafayette, supra, at 398, 400, 403 & n.24, 405 n.31, 405-08 & n.38, 98 S.Ct. 1123 (majority opinion). Accord, Whitworth v. Perkins, 559 F.2d 378 (5th Cir. 1977). See generally 1 P. Areeda & D. Turner, Antitrust Law, ¶ 214 (1978); The Supreme Court, 1977 Term, 92 Harv.L.Rev. 57, 282-83 (1978).
As a threshold matter, therefore, it is the court's conclusion that the Iowa zoning law does not even conflict with the federal antitrust laws because it does not compel or contemplate anticompetitive agreements on the part of Iowa municipalities.[7] And where the law and policy of a state as sovereign are not in express or implied conflict with the federal antitrust laws, the need to consider the applicability of the Parker exemption for that state's political subdivisions becomes in a sense moot. See, City of Lafayette, 435 U.S., at 413, 98 S.Ct. 1123 (plurality opinion), 425, 98 S.Ct. 1135 (Berger, C. J., concurring); Goldfarb, 421 U.S., at 790, 95 S.Ct. 2004.
Even if it could fairly be concluded that the Iowa zoning statute and its underlying policy conflict with the Sherman Act because they compelled or possibly contemplated defendants' anticompetitive activities alleged here, the court would further have to find that the grant of a Parker "state action" exemption in favor of these defendants is necessary in order to make the state's zoning statute work, and even then only to the minimum extent necessary. See, City of Lafayette, supra, at 425-26 & n.6, 98 S.Ct. 1123 (Burger, C. J., concurring); Cantor, 428 U.S., at 597 & n.37, 96 S.Ct. 3110. The court cannot so find upon the allegations set forth here. Clearly, the City of Mason City could adequately and effectively exercise its legislatively delegated zoning powers without entering before-hand into anticompetitive agreements with private entities. Denying the defendants any "state action" exemption to the Sherman Act under the circumstances alleged in *744 this case will not extirpate the Iowa zoning statute.
In sum, to the extent defendants allegedly entered into an anticompetitive agreement, they cannot rely upon the Iowa zoning statute to exempt them from liability under the federal antitrust laws. The point is not that Mason City is subject to the Sherman Act simply because its zoning decisions have some anticompetitive effect. Rather, it is that the city is not necessarily and automatically exempt simply because it is exercising its state delegated zoning powers, especially when it is alleged that those zoning powers were exercised in furtherance of an unlawful anticompetitive agreement with private developers. See, Whitworth v. Perkins, 559 F.2d 378 (5th Cir. 1977), vacated and remanded sub nom. City of Impact v. Whitworth, 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978), opinion reinstated and case remanded per curiam sub nom. Whitworth v. Perkins, 576 F.2d 696 (5th Cir. 1978), cert. denied, ___ U.S. ___, 99 S.Ct. 1224, 59 L.Ed.2d 460 (1979). Accord, City of Fairfax v. Fairfax Hospital Ass'n, 562 F.2d 280 (4th Cir. 1977), vacated and remanded, 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978), concurring opinion of Widener, J. adopted on remand, Unpublished Order, No. 76-1775 (4th Cir. June 13, 1978) Kurek v. Pleasure Driveway & Park District, 557 F.2d 580 (7th Cir. 1977), vacated and remanded, 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978), reinstated on remand, 583 F.2d 378 (7th Cir. 1978), cert. denied ___ U.S. ___, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979); Duke & Co. v. Foerster, 521 F.2d 1277 (3d Cir. 1975). Thus, the court's decision here intends no diminution of Mason City's otherwise legitimate authority with respect to zoning. See, City of Lafayette, 435 U.S., at 416-17, 98 S.Ct. 1123; Goldfarb, 421 U.S., at 792-93, 95 S.Ct. 2004.[8]See generally The Supreme Court, 1977 Term, 92 Harv.L.Rev. 57, 277-88 (1978).

Noerr-Pennington
Noerr involved a suit by a group of trucking companies and their trade associations under the antitrust laws against a group of railroads, a railroad association and a public relations firm. The plaintiffs alleged that the railroads had engaged the public relations firm to conduct a publicity campaign designed to influence legislation injurious to competition from the trucking industry. They further alleged the sole motive for the publicity campaign was the railroads' desire to destroy truckers as competitors in the long-distance freight business. There were no allegations or evidence that any governmental entity had entered into any agreement with the private parties in restraint of trade, or had otherwise cooperated or become involved with the publicity campaign, although evidence did exist that some governmental action had been taken in political response to the campaign. 365 U.S., at 129-35, 144, 81 S.Ct. 523.
In reversing the lower courts' judgments for the plaintiff truckers, the Supreme Court held that no violation of the Sherman Act can be predicated upon mere attempts to influence the passage or enforcement of laws, even when such attempts arise from anticompetitive motives and purposes. 365 U.S., at 138, 139-40, 81 S.Ct. 523. In reaching this decision the court made a point of distinguishing "agreement[s] jointly to seek legislation or law enforcement" from those "combinations normally held violative of the Sherman Act . . . characterized by an express or implied agreement or understanding that the participants will . . . help one another to take away the trade freedom of others through the use of such devices as . . . boycotts, market-division agreements, and other similar arrangements." 365 U.S., at 136, 81 S.Ct., at 529.
The Noerr holding was essentially reiterated in the Pennington decision.[9] 381 U.S. *745 657, 669-72, 85 S.Ct. 1585, 14 L.Ed.2d 626. Again, there were no allegations or evidence that any governmental entity had specifically entered into the anticompetitive agreement with the private parties, although some governmental action was secured as a result of the private parties' activities. Indeed, in considering one issue in the case  that damages could not be collected under the Sherman Act for injury resulting directly and only from the governmental actions of the Secretary of Labor  the Court specifically noted that "the [governmental] action taken to set a minimum wage for government purchases of coal was the act of a public official who is not claimed to be a co-conspirator . . .." 381 U.S., at 671, 85 S.Ct., at 1594 (emphasis added).[10]
Thus, to the extent this case presents allegations that the private developers entered into an anticompetitive agreement with the City of Mason City and its Council permanently to exclude competing developers from the relevant market, it raises at least one important factual issue relating to defendants' possible intent or purpose to deprive plaintiffs of any meaningful access to the City's zoning mechanisms and procedures. See, e. g., California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 512, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). On that basis alone this case is distinguishable from Noerr and Pennington. See, California Motor, supra.
The court holds, therefore, that a more complete factual record needs to be developed before it can be ascertained whether Noerr-Pennington political-speech immunity to Sherman-Act liability is applicable. The court simply cannot at this time conclude as a matter of law that plaintiffs have failed to state a claim under any conceivable set of facts that could be proved. Harman v. Valley National Bank of Arizona, 339 F.2d 564, 566 (9th Cir. 1964) ("[T]he complaint alleges that the acts of the [Arizona] Attorney General were those of a participating conspirator."). Accord Mark Aero, Inc. v. Trans World Airlines, Inc., 580 F.2d 289, 290 n.4, 292 n.12, 293 n.15, 296-97 (8th Cir. 1978).[11]See California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 513, 92 S.Ct. 609, 30 L.Ed.2d 642 ["Conspiracy with a licensing authority to eliminate a competitor may also result in an antitrust transgression." (emphasis added)], 515-16, 92 S.Ct. at 613 (1972); Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 706-08, 82 S.Ct. 1404, 1414, 8 L.Ed.2d 777 (1962); Duke & Co. v. *746 Foerster, 521 F.2d 1277, 1281 (3d Cir. 1975); Israel v. Baxter Laboratories, Inc., 151 U.S. App.D.C. 101, 104-09, 466 F.2d 272, 275-80 (1972). Cf. Kurek v. Pleasure Driveway & Park Dist., 557 F.2d, at 593-94; Metro Cable Co. v. CATV of Rockford, 516 F.2d 220, 222-24, 229-30 ["This is not a case in which the agency of government itself is alleged to be a part of the conspiracy . . .." (emphasis added)] (7th Cir. 1975).
In antitrust cases, where proof is largely in the hands of the alleged conspirators, dismissals prior to giving plaintiffs ample opportunity for discovery should be granted sparingly. E. g., Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 238 (1976); Seasongood v. K & K Insurance Agency, 548 F.2d 729, 733 (8th Cir. 1977). Accord, Mark Aero, 580 F.2d, at 296 & n.30.

Pendent State Law Counts
The court views counts 5 and 6 of the complaint as plaintiffs' alternative state law theories in support of their one claim. They are based upon the same allegations that undergird counts 1 through 4. The case as a whole involves a common group of operative facts. Counts 5 and 6, therefore, are properly before the court pursuant to the doctrine of pendent jurisdiction[12] and should not at this stage of the litigation be dismissed. See, e. g., United Mine Workers v. Gibbs, 383 U.S. 715, 721-29, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
It is therefore
ORDERED
Denied.
NOTES
[1] Jurisdiction is premised upon sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26; section 1337 of the Judiciary Code, 28 U.S.C. § 1337; and the doctrine of pendent jurisdiction.
[2] The other allegations are the usual ones generally necessary to state a claim under the federal antitrust laws; see generally Stifel, Nicolaus & Co. v. Dain, Kalman & Quail, Inc., 430 F.Supp. 1234, 1238, 1242-1243 (N.D.Iowa 1977), rev'd in part on other grounds, 578 F.2d 1256, 1259, 1262 (8th Cir. 1978); but are not directly material to the legal issues raised by defendants' motion to dismiss.
[3] The complaint alleges a combination and conspiracy unreasonably restraining trade in the relevant market, a rule of reason violation of section 1 of the Sherman Act, 15 U.S.C. § 1 (count 1); a group boycott, in per se violation of section 1 (count 2); an unlawful attempt to monopolize the relevant market, in violation of section 2 of the Sherman Act, 15 U.S.C. § 2 (count 3); a conspiracy to unlawfully monopolize the relevant market, also in violation of section 2 (count 4); and violation of sections 4 and 5 of the Iowa Competition Law, Iowa Code §§ 553.4, -.5 (1978) (count 5), and the Iowa zoning laws, see Iowa Code ch. 414 (1978) (count 6).

There is no question that the defendants, including the City of Mason City, are "persons" within the meaning of the federal antitrust laws. E. g., City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 394-97, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978); Monell v. Dept. of Social Services, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (majority opinion), 707 n.3, 98 S.Ct. 2044 n.3. (Powell, J., concurring) (1978).
[4] See notes 2 and 3 supra. The court emphasizes that it construes the complaint to be claiming that the City's affirmative agreement to exclude all competing developers violates the antitrust laws. Thus, it is not the City's decision to deny Beaver Farm's zoning request, as such and without more, that is the allegedly offensive activity.
[5] Thus, a state cannot "give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful." 317 U.S., at 351, 63 S.Ct., at 314.
[6] The court's research of the relevant Iowa authorities does not indicate any interpretation of the Iowa zoning statute supporting the view that the Iowa legislature's intent and policy in enacting ch. 414 were anticompetitive in nature. Nor have the defendants referred the court to any.
[7] To say that the Iowa legislature may have foreseen that the zoning statute, when otherwise properly applied by the municipalities, might result in anticompetitive effects is not to say that it therefore also affirmatively contemplated and approved direct anticompetitive activity violative of the federal antitrust laws. See, e. g., Goldfarb, 421 U.S., at 790-91, 95 S.Ct., at 2015 (". . . [A]lthough the [Virginia] Supreme Court's ethical codes mention advisory fee schedules they do not direct either respondent to supply them, or require the type of price floor which arose from respondents' activities. Although the State Bar apparently has been granted the power to issue ethical opinions, there is no indication in this record that the Virginia Supreme Court approves the opinions."). Accord, Cantor, 428 U.S., at 595-96, 96 S.Ct. 3110.
[8] The same analysis would apply with respect to the Iowa Home Rule Statute, Ch. 364, Iowa Code (1978); which defendants intimate would possibly be pertinent here. See, Defendants' Brief in Resistance at p. 6, n.5, filed January 15, 1979. Cf., City of Des Moines v. Lohner, 168 N.W.2d 779, 782 (Iowa 1969).
[9] Pennington specifically involved an agreement between a union and large coal operator/employers that was in part intended to secure uniform labor standards throughout the coal industry. The Court held that to the extent the agreement had anticompetitive effects on segments of the industry outside the particular bargaining unit it was restricted by national antitrust policy. The Clayton and Norris LaGuardia labor exemptions to the Sherman Act would not apply. 381 U.S., at 661-668, 85 S.Ct. 1585. However, to the extent evidence adduced an agreement between private entities involving concerted effort merely to influence action by the Secretary of Labor, the agreement would not be in violation of the Sherman Act. Id., at 669-72, 85 S.Ct. 1585.
[10] In California Motor Transport Co. v. Trucking Unlimited, 404 U.S., at 510-11, 92 S.Ct. 609, the Supreme Court extended the Noerr-Pennington rule to attempts to influence administrative and judicial proceedings in addition to the legislative and executive actions specifically at issue in Noerr and Pennington. The Court, furthermore, clarified the Noerr-Pennington delineation of a "mere sham" exception. See, California Transport, id., at 511-12, 92 S.Ct. 609.
[11] A specific holding in Mark Aero, see 580 F.2d, at 297, was that the allegations of the complaint did not come within the "mere sham" exception to Noerr-Pennington immunity  the exception the Supreme Court delineated in its California Motor decision. There were no allegations in Mark Aero, as there are here, that the governmental entity was a partner in the anticompetitive agreement or conspiracy. Such allegations are sufficient to raise the reasonable inference that any meaningful access to Mason City's zoning procedures on plaintiffs' part was totally and permanently foreclosed. Unlike the Mark Aero case, the allegations here are sufficient to interject the "mere sham" exception as an issue requiring further factual elaboration. See, e. g., Mark Aero, 580 F.2d, at 295 & n.28, 296 ("The fundamental question presented in each case involving the `sham' exception, whether argued in a nonadjudicative or an adjudicative setting, is the question of intent.").
[12] One plaintiff and some defendants are Iowa citizens. Federal diversity jurisdiction, therefore, is unavailing because complete diversity is lacking.