Edgar E. WHITWORTH, d/b/a Dinkie's Food Mart, Plaintiff-Appellant,

v.

Dallas PERKINS et al., Defendants-Appellees.

No. 76–1593.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1977.

Donald Scott Thomas, Jr., Austin, Tex., for Tom Roden and Pinkie's Inc.

Before TUTTLE, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This antitrust suit charges that defendants conspired to restrain competition in the sale of alcoholic beverages in Impact, Texas, by preventing plaintiff from making such sales on his property. The defendants are the town (a municipal corporation), six individuals (sued both individually and as aldermen of the town), and three private Texas corporations (including the corporation which developed this new town and those authorized to sell liquor in the town).

The district court entered summary judgment for the defendants. It concluded that the city's valid zoning ordinance, under which the operation of a liquor business on plaintiff's property is prohibited, bars recovery regardless of whether defendants' actions otherwise violate the antitrust laws. It reasoned that the "cause" of the plaintiff's injury would be the ordinance rather than any illegal conspiracy.

■ The judgment is reversed. The mere presence of the zoning ordinance does not necessarily insulate the defendants from antitrust liability where, as here, the plaintiff asserts that the enactment of the ordinance was itself a part of the alleged conspiracy to restrain trade. There are also significant questions concerning the availability of the "state action" exception to the antitrust laws which may have to be legally and factually developed and confronted on remand in the determination of this case.

Taylor County, Texas, and its largest city, Abilene, do not permit the sale of alcoholic beverages. In 1961 the individual defendant Dallas Perkins incorporated the town of Impact near Abilene under the relevant Texas statutes. Tex.Rev.Civ.Stat.

William Thomas Jacks, Austin, Tex., for plaintiff-appellant.

Beverly Tarpley, Charles Scarborough, Abilene, Tex., for Perkins et al.

Ann. art. 1133 (Vernon 1963). It had over the requisite 200 inhabitants but only 31 qualified voters. After litigation, Impact was held by the Texas courts to have been validly incorporated. *See Perkins v. State,* 367 S.W.2d 140 (Tex.1963). Shortly thereafter, the new city authorized the sale of alcoholic beverages·under the local option provisions of Texas law. Tex.Penal Code Ann. art. 666–32 (Vernon 1976 Auxiliary Pamphiet). Thus was created an "oasis" on the boundary of a "dry" city in a "dry" county. At approximately the same time the city council enacted a comprehensive zoning ordinance. That ordinance prohibited the sale of alcoholic beverages on lots zoned residential.

In 1967 the plaintiff purchased a lot zoned residential. In 1975 he attempted to secure appropriate authorization to sell alcoholic beverages on that land. This was denied by the city because of the ordinance. He then commenced this action against the City of Impact, its mayor, secretary, and the three other aldermen of Impact, and various other private defendants engaged in or related to persons engaged in the sale of alcohol in Impact.

The district court determined that the zoning ordinance had been enacted in accordance with Texas law. That determination is accepted as being accurate for the consideration of this case.

The court then stated that it had no authority to inquire into the "motives or the integrity of the members of the municipal legislative body in the exercise of their legislative powers" and concluded that the plaintiff would "not be entitled to use his property in Impact for a place to sell alcoholic beverages regardless of what the defendants' conduct has been in regard to the alleged anti-trust violations."

Plaintiff clearly alleges that the defendants enacted the ordinance for the precise purpose of excluding him from the liquor business in furtherance of their conspiracy:

At various times since the inception of the contract, combination or conspiracy, the Defendants have engaged in various overt acts in furtherance thereof, some of which are known to the Plaintiff . . . .. Specifically, the Defendants, . . . in their capacity as Aldermen of the City of Impact, have at various times purportedly enacted various ordinances regulating the sale of alcoholic beverages within said City and restricting such sales to certain areas. These ordinances include . . . an ordinance dated December 29, 1961, entitled "Zoning Ordinance for the City of Impact, Texas," . . . ..

If the plaintiff can prove this allegation and that he was harmed by the zoning ordinance, questions remain as to whether the ordinance was passed as part of an illegal conspiracy, and whether any acts violative of the antitrust laws are nonetheless immunized because the ordinance was the product of state action.

The starting point for the latter question is *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In that case an injunction was sought against a state agricultural marketing program for raisins. The program had been created by state statute and reduced the amount of competition in the market for raisins. The Supreme Court held that "nothing in the language of the Sherman Act or in its history . . . suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." 317 U.S. at 350–351, 63 S.Ct. at 313. In the three decades since that opinion the contours of this exclusion have been constantly redefined.

It is readily apparent that there are many factual differences between the scheme left undisturbed in *Parker* and the one here at issue. *Parker* involved the conduct of a state, while we are concerned with a city, acting under state law. *Parker* involved a program allegedly enacted for the public good, while here the allegation is that the program was enacted to further private financial objectives. Finally, in *Parker* the questioned state program had been adopted "with the collaboration of officials of the

Department of Agriculture and aided by loans from the Commodity Credit Corporation recommended by the Secretary of Agriculture." There is no such federal, or even state conduct suggesting tacit approval in the present case. In fact, this case appears to fall precisely within a category that the *Parker* Court specifically refrained from dealing with. As the Supreme Court put it, that case involved "no question of the state or its municipality becoming a participant in a private agreement or combination by others for restraint of trade". 317 U.S. at 351–352, 63 S.Ct. at 314. That is the question here.

In resolving this type of question this Court has recognized that the *Parker* doctrine is not to be applied automatically. A thoughtful analysis is called for to ensure that it is a *bona fide* governmental decision for which exemption is being sought.

> [I]t is not every governmental act that points a path to an antitrust shelter. We reject "the facile conclusion that action by any public official automatically confers exemption." *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 1 Cir. 1970, 424 F.2d 25, 30. In *Asheville Tobacco Board of Trade, Inc. v. FTC*, 4 Cir. 1959, 263 F.2d 502, 509, the court stated: ". . . such action must be state action, not individual action masquerading as state action. A state can neither authorize individuals to perform acts which violate the antitrust laws nor declare that such action is lawful."

*Woods Exploration & Pro. Co. v. Aluminum Co. of America*, 438 F.2d 1286, 1294 (5th Cir. 1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972). This Court's focus on the nature of the decision made by the governmental unit which claims the protection of *Parker* was reflected in *Jeffrey v. Southwestern Bell*, 518 F.2d 1129, 1134 (5th Cir. 1975), where the activity was scrutinized to be sure that it was not "perfunctory" or "slipshod." *See also Gas Light Co. of Columbus v. Georgia Power Co.*, 440 F.2d 1135 (5th Cir. 1971), *cert. denied*, 404 U.S. 1062, 92 S.Ct. 732, 30 L.Ed.2d 750 (1972).

If, on remand, the district court reaches the state action exemption inquiry, it will need to take careful note of two recent Supreme Court opinions which clarify the scope of that doctrine. *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976), concerned a regulated utility which provided free light bulbs to its consumers. It could not discontinue this practice unless it filed a new tariff with the state public service commission. The cessation of the light bulb program without governmental approval would constitute a violation of state law. The Court nonetheless held that the state action defense was not available. *Bates v. State Bar of Arizona*, —— U.S. ——, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), addressed an attack on State Supreme Court rules prohibiting lawyers from advertising. The Court there ruled that because the allegedly anticompetitive practice had been adopted by the affirmative act of the state and reflected its policies, the state action defense was available. Whether *Parker* might shield the defendants in the instant case can only be determined by careful consideration of these latest pronouncements.

Finally, we note that where the governmental unit concerned is other than a state itself, such as the municipality here, a more thorough analysis is required before *Parker* can be held to apply.

> A subordinate state governmental body is not *ipso facto* exempt from the operation of the antitrust laws. Rather, a district court must ask whether the state legislature contemplated a certain type of anticompetitive restraint. . . . [T]he connection between a legislative grant of power and the subordinate entity's asserted use of that power may be too tenuous to permit the conclusion that the entity's intended scope of activity encompassed such conduct. Whether a governmental body's actions are comprehended within the powers granted to it by the legislature is, of course, a determination which can be made only under the specific facts in each case.

**382**

City of Lafayette, La. v. La. Power & Light Co., 532 F.2d 431, 434 (5th Cir. 1976), cert. granted, 430 U.S. 944, 97 S.Ct. 1577, 51 L.Ed.2d 791 (U.S.1977). Based on the pleadings in this case and this line of authority interpreting Parker, we are unable to say at this early stage that the plaintiff could prove no set of facts which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Hepperle v. Johnston, 544 F.2d 201 (5th Cir. 1976).

In the oral argument of this case, numerous factual representations were made in defense of the district court's decision which have no support in the record now before us. Matters such as the number of acres in Impact which are zoned for commercial use, who owns such land, the relationship of these zones to each other, and the past and present status of the parcel of land owned by the plaintiff are all issues which do not appear in the documents used to come to a summary disposition. In order to properly develop these, and other facts, and to conduct the inquiry into the Parker question, if such an inquiry proves necessary, the case must be remanded. Our decision does not in the least forecast the probable outcome of this litigation. Whether there was a conspiracy, or whether any conspiracy restrained trade or competition, or whether the zoning provisions "fall within the limited state action immunity doctrine [are] question[s] that we do not reach; it is for the trial court, in the first instance, to make this determination." Litton Systems, Inc. v. Southwestern Bell Tel. Co., 539 F.2d 418, 423 (5th Cir. 1976).

REVERSED AND REMANDED.