Eleanor SCHIESSLE, individually and as trustee under trust number 101, Plaintiff,

v.

Donald E. STEPHENS; Hubert Langer; Stephan Giles; Leslie Scott; Chester Kolaski; Lorraine Clemenson; Steve Minale; the Village of Rosemont, an Illinois municipal corporation; O'Hare Executive Towers, Ltd., an Illinois limited partnership; George Soteras; Lawrence G. Malanfant; Morando Berrettini; O'Hare Executive Towers, Inc., an Illinois Corporation; Arthur Swanson, Paul Swanson, and Carl Swanson, individually and d/b/a Arthur Swanson & Associates, and Edward R. Kenefick, Defendants.

No. 79 C 3160.

United States District Court, N. D. Illinois, E. D.

Oct. 30, 1981.

Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., Arthur M. Scheller, Jr., Craig Peterson, Evanston, Ill., for plaintiff.

Burke, Weber & Egan, Burke, Nash & Shea Ltd., Richard M. Panichi & Assoc., Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter comes before the court on the defendants' renewed motion to abstain and dismiss [1] or, alternatively, to stay this proceeding upon the basis of abstention and immunity. For the reasons set forth below, the motion to abstain and dismiss is granted in part and denied in part.

The plaintiff Eleanor Schiessle ("Schiessle") filed suit in this court on August 1, 1979 [2] against the defendants Donald Stephens ("Stephens"), president of the board of trustees of the Village of Rosemont, Illinois; the Village of Rosemont Illinois ("the village"); the individual members of the village's board of trustees; O'Hare Executive Towers, Ltd. ("O'Hare Ltd."); O'Hare Executive Towers, Inc. ("O'Hare Inc."); George Soteras, Lawrence Malanfant, and Morando Berrettini ("the developers"); Arthur Swanson, Paul Swanson, and Carl Swanson, individually and doing business as Arthur Swanson and Associates ("the Swansons"); and Edward Kenefick ("Kenefick"), a real estate developer (hereinafter sometimes collectively referred to as "the defendants").

The well-pleaded facts alleged in the complaint must be taken as true for the purpose of a motion to dismiss. *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1332 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Accordingly, the facts alleged in the complaint are as follows. Schiessle owns approximately seventeen acres of land ("the property") in the village. Schiessle is in the business of owning, marketing, and developing real estate in Cook County, Illinois. The village and the village board are in charge of implementing the Rosemont Redevelopment Plan ("the redevelopment plan"). The defendants O'Hare Ltd., O'Hare Inc., and the

developers are involved in the development of real estate in the vicinity of and abutting Schiessle's property. Schiessle's property is currently zoned for commercial·use under the village's zoning ordinance and is used for several businesses. Schiessle's property is within the boundaries of the redevelopment plan as adopted by the village board on July 5, 1979. On July 18, 1979, the village board passed an ordinance authorizing the institution of proceedings for the condemnation of Schiessle's property. No suit for condemnation of Schiessle's property, however, had been filed at the time that the complaint in this case was filed. Schiessle contends that an agreement exists among the defendants to acquire Schiessle's property by condemnation or threat of condemnation and then convey the property to O'Hare Ltd., O'Hare Inc., the developers, the Swansons, and Kenefick for private development. Schiessle further contends that she granted an option to Lakewoods Realty and Mortgage Corporation to purchase her property and that Schiessle has been prevented from consummating this transaction by the defendants' actions.

In counts I and II of the complaint, Schiessle alleges that the defendants' actions are in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1978), and section 16 of the Clayton Act, 15 U.S.C. § 26 (1978). Schiessle requests money damages, attorneys' fees, and an injunction enjoining the defendants from continuing the allegedly unlawful conduct. In counts III through VIII of the amended complaint, Schiessle alleges that Stephens, the village, and the individual members of the village board of trustees have deprived Schiessle of her constitutional rights in violation of 42 U.S.C. § 1983 (1978). Schiessle asks for money damages, attorneys' fees, and an injunction enjoining the village and the village board from implementing the plan or condemning Schiessle's property. In count IX of the amended complaint, Schiessle challenges the constitutionality of the Illinois Real Property Tax Increment Alloca-

---

1. The defendants' first motion to dismiss was denied by this court on January 22, 1981.

2. Schiessle filed a first amended complaint on August 15, 1979.

tion Redevelopment Act, Ill.Rev.Stat. ch. 24, § 11–74.4–1 et seq. (1977) ("the Illinois act"). The village's redevelopment plan was promulgated pursuant to the Illinois act. Schiessle asks for a declaratory judgment pursuant to 28 U.S.C. § 2201 (1978) that the Illinois act is unconstitutional and an injunction enjoining the defendants from enforcing the Illinois act. In count X of the amended complaint, Schiessle alleges a cause of action based upon common law conspiracy against the defendants. Schiessle asks for money damages and an injunction enjoining the defendants from further allegedly unlawful conduct. In count XI of the amended complaint, Schiessle alleges a cause of action against the defendants based upon tortious interference with business relations. Schiessle asks for money damages and an injunction enjoining the defendants from further allegedly unlawful conduct.

On October 22, 1979, the village filed suit against Schiessle in the Circuit Court of Cook County, Illinois to acquire her property pursuant to eminent domain. On March 16, 1981, Schiessle filed a motion to dismiss and traverse the suit in state court. In her motion to dismiss the complaint in state court, Schiessle contends that the village's redevelopment plan is illegal, that the Illinois act is unconstitutional, and that the village's actions have prevented Schiessle from developing her property.

The defendants filed a renewed motion to dismiss and abstain in this case on March 30, 1981. In support of their motion, the defendants contend that this court should abstain from further proceedings with regard to counts III through XI of the amended complaint based upon the abstention doctrine as enunciated in *Younger v. Harris*, 401 U.S. 37, 54, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971). The defendants further contend that counts I and II of the amended complaint must be dismissed in that municipalities are immune from any liability under the federal antitrust laws. The de-

fendants also contend that the individual board members are entitled to legislative immunity from liability under the federal civil rights laws. Alternatively, assuming that the defendants are not immune under the antitrust laws, the defendants contend that this court should abstain as to counts I and II of the amended complaint based upon the abstention doctrine set forth by the United States Supreme Court in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). In response to the defendants' renewed motion to dismiss and abstain, Schiessle contends that the defendants' renewed motion is procedurally improper pursuant to Federal Rule of Civil Procedure 12(g). Schiessle further contends that abstention would be inappropriate in this case. The court will address these various contentions *seriatim*.

■ The first inquiry is whether the defendants' renewed motion to dismiss and abstain is properly before the court. Federal Rule of Civil Procedure 12(g) provides, in pertinent part:

> If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

Fed.R.Civ.P. 12(g). Therefore, a party who makes a motion under rule 12 is precluded from raising a similar objection omitted in the first motion unless the motion is based upon a ground set forth in Federal Rule of Civil Procedure 12(h)(2). Rule 12(h)(2) includes a motion to dismiss for failure to state a claim. *See* Fed.R.Civ.P. 12(h)(2). Accordingly, the court concludes that the defendants' renewed motion to dismiss and abstain is properly before the court.

■ Regarding the defendants' motion to abstain,[3] when a plaintiff properly in-

---

**3.** The court construes the motion to abstain as a motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b).

vokes one of the statutory grants of federal jurisdiction, a federal district court generally must assume and exercise jurisdiction over the plaintiff's claims. *FSLIC v. Krueger*, 435 F.2d 633, 637 (7th Cir. 1970). The "judge-made" doctrine of abstention, however, allows a federal court, in certain limited circumstances, to decline this properly-invoked federal court jurisdiction because the rights asserted before the court may be more appropriately adjudicated in some other forum. *See* C. Wright & A. Miller 17 *Federal Practice and Procedure: Civil* § 4241 (1978). The question of when the doctrine of abstention should be invoked by the court is a matter of discretion which must be approached on a case-by-case basis. *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965); *Baggett v. Bullitt*, 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964).

Three abstention doctrines have been developed by the United States Supreme Court. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–46, 47 L.Ed.2d 483 (1976); *City Investing Co. v. Simcox*, 633 F.2d 56, 59–60 (7th Cir. 1980). The oldest and best-settled abstention approach is that set forth by the United States Supreme Court in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under the *Pullman* abstention doctrine, a federal court should refrain from deciding a case in which state action is challenged in federal court as contrary to the federal constitution if there are unsettled questions of state law which may be dispositive of the case and which will avoid the need for deciding the constitutional question. *Id.* at 501, 61 S.Ct. at 645. *See generally* C. Wright & A. Miller, 17 *Federal Practice and Procedure: Civil* § 4242 (1978 & Supp.1981). The second doctrine articulated by the United States Supreme Court is the *Burford* abstention doctrine set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The *Burford* doctrine requires the district court to abstain and to relegate a federal question to the state courts because of the state courts' superior

competence to adjudicate such matters or because the federal issues touch matters of traditional state concern, the resolution of which is of singular importance to the administration of state affairs. *Id.* at 332, 63 S.Ct. at 1106. *See Bickham v. Lashof*, 620 F.2d 1238, 1242 n.6 (7th Cir. 1980); *Wynn v. Carey*, 582 F.2d 1375, 1382–83 (7th Cir. 1978). The third abstention doctrine is that set forth by the United States Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* doctrine requires federal courts to abstain from restraining state criminal proceedings—absent bad faith, harassment, or a patently invalid state statute—out of respect for state functions. *Id.* at 54, 91 S.Ct. at 755. *See City Investing Co. v. Simcox*, 633 F.2d 56, 59 n.9 (7th Cir. 1980). The *Younger* abstention doctrine has been expanded to include pending state civil proceedings where abstention is appropriate based upon the principles of equity, comity, and federalism. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975). *See Cousins v. Wigoda*, 463 F.2d 603, 608 (7th Cir. 1972).

In *Ahrensfeld v. Stephens*, 528 F.2d 193 (7th Cir. 1975), the United States Court of Appeals for the Seventh Circuit was faced with an abstention question similar to that posed by the case presently before this court. In *Ahrensfeld*, the plaintiffs, property owners in the Village of Rosemont, Illinois, filed suit in federal district court against the defendants the Village of Rosemont and the individual members of the board of trustees of the Village of Rosemont. *Id.* at 195. The suit in federal district court sought injunctive, declaratory, and monetary relief from the defendants pursuant to 42 U.S.C. § 1983 (1978) for an allegedly unconstitutional Village of Rosemont resolution which authorized the village to acquire certain property by eminent domain for the construction of an athletic and convocation center. *Id.* The plaintiffs in *Ahrensfeld* also challenged the constitutionality of the Illinois Eminent Domain Act. *Id.* As in the case before this court, the village resolution in *Ahrensfeld* authorized

the Village of Rosemont to file condemnation actions in state court to acquire the property by eminent domain. Pursuant to the resolution, the Village of Rosemont instituted condemnation proceedings in state court against the various property owners, including the plaintiffs. *Id.* While these state court proceedings were pending, the plaintiffs filed suit in federal district court seeking to stop the taking of their property. *Id.* The district court dismissed the action based upon the doctrine of abstention. *See id.* at 196.[4]

The United States Court of Appeals for the Seventh Circuit in *Ahrensfeld* affirmed the dismissal by the district court by applying both the *Younger* and *Pullman* abstention doctrines. In so doing, the Seventh Circuit determined that *Younger* abstention is appropriate in a case involving a state's power of eminent domain. The court in *Ahrensfeld* noted that the United States Supreme Court previously had acknowledged the "sensitive nature" of a federal court's intervention in a state's eminent domain system. *See Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28–29, 79 S.Ct. 1070, 1072–73, 3 L.Ed.2d 1058 (1959). Thus, the Seventh Circuit concluded that state condemnation and eminent domain proceedings involve issues which should be determined by the state courts: "Not only is municipal eminent domain ordinarily a local matter, but it is difficult to imagine a situation where more confusion would arise than would be the case if the parties here were allowed to simultaneously pursue both this action and the state condemnation proceeding." 528 F.2d at 198, *quoting Creel v. City of Atlanta*, 399 F.2d 777, 779 (5th Cir. 1968). Moreover, the Seventh Circuit further concluded that the presence of a federal constitutional claim did not preclude the application of *Younger* abstention because the federal court must assume that a state court will determine the merits of any federal issue properly presented to the state court. 528

F.2d at 198. In addition, the Seventh Circuit noted that the Illinois eminent domain procedure permits the condemnee to question the nature of the property taking and to raise other defenses in the form of a "traverse" or motion to dismiss the condemnor's petition. *Id.* at 199. Thus, the court reasoned that "[s]ince the plaintiffs may raise the crux of their constitutional claims in the pending state proceedings, federal court intervention is unnecessary." *Id.*

Based upon the challenge to the constitutionality of the Illinois Eminent Domain Act, the Seventh Circuit also concluded that *Pullman* abstention was appropriate in *Ahrensfeld* since deference should be given to state courts to interpret the challenged state statute prior to a federal court's determination of the constitutionality of the statute. *Id.* As to the proper procedure for abstention, the Seventh Circuit in *Ahrensfeld* concluded that, where a district court abstains in deference to pending state proceedings so as not to interfere with state sovereignty, the federal cause of action should be dismissed. *Id.* at 200.

Applying the reasoning of the *Ahrensfeld* court to the case presently before this court, the court concludes that it must abstain as to counts III through XI of the amended complaint pursuant to both the *Pullman* and *Younger* abstention doctrines. The facts in *Ahrensfeld* are similar to the allegations contained in the complaint in the present case. In counts III through VIII of the present amended complaint, Schiessle alleges that her constitutional rights are being violated regarding the passage of the village resolution permitting her property to be taken by eminent domain. Schiessle alleges in count IX of the amended complaint that the Illinois act pursuant to which the village passed the resolution is unconstitutional. In counts X and XI of the amended complaint, Schiessle alleges conspiracy and tortious interference regard-

---

4. The district court dismissed the action as to the Village of Rosemont on the ground that a municipality is not a "person" for the purpose of 42 U.S.C. § 1983 (1975). The *Ahrensfeld* case was decided prior to *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

ing the defendants' plans to condemn Schiessle's property. As in *Ahrensfeld*, these contentions can be raised by Schiessle in the pending state condemnation proceeding. Indeed, Schiessle has raised essentially the same issues in the state court proceeding as are contained in counts III through XI of the amended complaint in this case. Thus, *Younger* abstention is appropriate in the present case. *Pullman* abstention also is appropriate in order for the state court to address the constitutionality of the Illinois act. Therefore, this court abstains as to counts III through XI of the amended complaint pursuant to the *Pullman* and *Younger* abstention doctrines.[5] Accordingly, the motion to abstain as to counts III through XI of the amended complaint is granted and those counts are dismissed.[6]

With regard to counts I and II of the amended complaint in this case, the defendants contend that these counts must be dismissed for failure to state a claim in that municipalities are immune from liability under the federal antitrust laws. In order to determine whether the plaintiff has stated a cause of action against the defendants in the present case, the court will review the case law regarding a municipality's liability for alleged violations of the federal antitrust laws.

■■■ The federal antitrust laws impose liability upon any "person" or "persons" who violate the provisions of the various antitrust statutes. *See, e. g.,* 15 U.S.C. § 1 (1978) (Sherman Act); 15 U.S.C. § 26 (1978) (Clayton Act). States and municipalities are persons within the meaning of the antitrust laws such that a state or municipality may sue and be sued for alleged violations of the federal acts. *See City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 396–97, 98 S.Ct. 1123, 1128–29, 55 L.Ed.2d 364 (1978); *Georgia v. Evans,* 316 U.S. 159, 162, 62 S.Ct. 972, 974, 86 L.Ed. 1346 (1942); *Chattanooga Foundry & Pipe Works v. City of Atlanta,* 203 U.S. 390, 396, 27 S.Ct. 65, 66, 51 L.Ed. 241 (1906). Moreover, there is a presumption against any implied exclusions from federal antitrust law liability. *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 398, 98 S.Ct. 1123, 1129, 55 L.Ed.2d 364 (1978).

Nevertheless, the courts have acknowledged two public policy doctrines which are sufficiently weighty to override the presumption against implied exclusions from federal antitrust law liability. *Id.* at 399, 98 S.Ct. at 1129. One of the overriding public policies is the *Noerr-Pennington* doctrine. Under the *Noerr-Pennington* doctrine, a concerted effort by persons to influence lawmakers to enact legislation beneficial to themselves or detrimental to competitors, regardless of any anticompetitive purpose or intent, is not within the scope of the federal antitrust laws. *United Mine Workers of America v. Pennington,* 381 U.S. 657, 669–72, 85 S.Ct. 1585, 1592–95, 14 L.Ed.2d 626 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 137–38, 81 S.Ct. 523, 529–30, 5 L.Ed.2d 464 (1961).

---

**5.** The only significant difference between the present case and *Ahrensfeld* is that the complaint in this case was filed prior to the now-pending state court condemnation proceeding. While a subsequent state proceeding cannot act as a bar to the prior-sought federal relief, the subsequent filing of the condemnation suit does not affect a federal court's ability and responsibility to abstain. *See generally Ahrensfeld v. Stephens,* 528 F.2d 193, 199 n.9 (7th Cir. 1975). The only other concern in the present case is whether the case was ripe for adjudication if the basis of the complaint was the threatened condemnation proceeding, not the actual institution of such a proceeding. Since the condemnation proceeding was instituted after the filing of this suit but prior to any ruling by this court, the court concludes that the case is properly before the court for the application of the *Pullman* and *Younger* abstention doctrines.

**6.** Under the *Pullman* abstention doctrine, a federal court should retain the case pending a resolution of the state court proceedings. *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 501–02, 61 S.Ct. 643, 645–46, 85 L.Ed. 971 (1941). Under *Burford* and *Younger* abstention, however, most courts dismiss the federal case. *See* C. Wright & A. Miller, 17 *Federal Practice and Procedure: Civil* § 4243 (1978). This court will follow the procedure of the *Ahrensfeld* court and dismiss counts III through XI of the amended complaint.

The other overriding public policy is the state action exemption, first pronounced by the United States Supreme Court in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).[7] In *Parker*, the plaintiffs challenged the California Agricultural Prorate Act which established a program to permit state officials to maintain prices and restrict competition among raisin growers. *Id.* at 346, 63 S.Ct. at 311. The court in *Parker* concluded that the program was not prohibited by the federal antitrust laws since "nothing in the language of the Sherman Act or in its history . . . suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Id.* at 350–51, 63 S.Ct. at 313–14.

The court's pronouncement of a "state action exemption" to federal antitrust law liability has been addressed by the Court in several cases subsequent to *Parker*. In *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), the plaintiff challenged as violative of the Sherman Act a minimum fee schedule for lawyers which was published by the county bar association and enforced by the Virginia State Bar. *Id.* at 775, 95 S.Ct. at 2007. The state action exemption was claimed on the ground that the Virginia State Bar was "a state agency by law."[8] *Id.* at 790, 95 S.Ct. at 2014. The Court in *Goldfarb* held that the minimum fee schedule could be subject to challenge under the federal antitrust laws. *Id.* at 791, 95 S.Ct. at 2015. In so doing, the Court found that, for the purpose of the state action exemption, not every act of a state agency is that of the state as sovereign. *Id.* Rather, the *Goldfarb* Court concluded that the state action exemption requires that the allegedly anticompetitive activity be compelled by direction of the state acting as sovereign. *Id.*

In *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Court considered the applicability of the federal antitrust laws to a ban on attorney advertising. *Id.* at 353, 97 S.Ct. at 2693. The ban on attorney advertising had been directly imposed by the Arizona Supreme Court. *Id.* The Court in *Bates* held that the state action exemption applied to the ban on attorney advertising. *Id.* at 363, 97 S.Ct. at 2698. In so holding, the Court concluded that, pursuant to the Arizona constitution and state law, the Arizona Supreme Court is "the ultimate body wielding the State's power over the practice of law . . . and, thus, the restraint is 'compelled by direction of the State acting as a sovereign.'" *Id.* at 360, 97 S.Ct. at 2697, *quoting Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975).

Similarly, in *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976), an electric utility regulated by state law was charged by an independent seller of light bulbs with federal antitrust laws violations in the operation of a program which provided light bulbs without extra cost to electricity customers. *Id.* at 581, 96 S.Ct. at 3113. The regulated utility contended that the state action exemption applied since the light bulb program was included in the utility's rate which was filed with and approved by the state's public service commission. *Id.* at 584–85, 96 S.Ct. at 3114–15. The Court in *Cantor* found that, since no state statute regulated the light bulb industry and that neither the state legislature nor the state public service commission had passed upon the desirability of such a program, the commission's ap-

---

7. The *Parker* Court did not actually announce a rule of antitrust exemption or immunity, but rather determined that the federal antitrust laws do not apply to certain state-maintained activities. Nevertheless, the courts use the short-hand references of state action or antitrust immunity. *Kurek v. Pleasure Driveway & Park District*, 557 F.2d 580, 587 n.5 (7th Cir. 1977).

8. In *Goldfarb*, the Virginia legislature had granted to the Virginia Supreme Court the power to regulate the practice of law. *Id.* at 776, 95 S.Ct. at 2007. The Virginia State Bar acted as an administrative agency of the Virginia Supreme Court. *Id.* In addition, no Virginia statute referred to lawyers' fees, nor had the Virginia Supreme Court taken any action requiring the use of minimum fee schedules. *Id.*

proval of the utility's light bulb program did not implement any statewide policy relating to light bulbs and that the "State's policy is neutral on the question whether a utility should, or should not, have such a program." *Id.* at 585, 96 S.Ct. at 3115.[9]

In *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), the United States Supreme Court addressed the issue of the applicability of the state action exemption to allegedly anticompetitive actions by a municipality. *Id.* at 391, 98 S.Ct. at 1125. The plaintiffs in *Lafayette*, municipalities organized under the laws of the State of Louisiana, filed suit in federal district court against several investor-owned electric service utilities alleging various antitrust laws violations which injured the plaintiffs in the operation of their electric utility services. *Id.* at 391–92, 98 S.Ct. at 1125–26. One of the defendants, Louisiana Power and Light Company, filed a counterclaim against the plaintiffs and a nonparty electric cooperative alleging antitrust laws violations by the counterplaintiffs. *Id.* at 392, 98 S.Ct. at 1126. The counterclaim alleged that the counterplaintiffs had conspired to engage in sham litigation against Louisiana Power and Light Company to delay or prevent the construction of a nuclear electric-generating plant and to eliminate competition. *Id.* at n.6. The plaintiffs moved to dismiss the counterclaim pursuant to the state action exemption. *Id.* at 392, 98 S.Ct. at 1126. The district court granted the motion to dismiss, holding that the antitrust laws do not apply to any state activity. *Id.* The United States Court of Appeals for the Fifth Circuit reversed the decision of the district court and remanded for further proceedings. *City of Lafayette v. Louisiana Power & Light Co.*, 532 F.2d 431, 434 (5th Cir. 1976). In so doing, the Fifth Circuit noted that the district court's decision predated *Goldfarb v. Virginia State Bar* and

that *Parker v. Brown* and *Goldfarb* require the following analysis to determine whether a municipality is liable for violations of the federal antitrust laws:

> A subordinate state governmental body is not *ipso facto* exempt from the operation of the antitrust laws. Rather, a district court must ask whether the state legislature contemplated a certain type of anticompetitive restraint. In our opinion, though, it is not necessary to point to an express statutory mandate for each act which is alleged to violate the antitrust laws. It will suffice if the challenged activity was clearly within the legislative intent. Thus, a trial judge may ascertain, from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of. On the other hand, as in *Goldfarb*, the connection between a legislative grant of power and the subordinate entity's asserted use of that power may be too tenuous to permit the conclusion that the entity's intended scope of activity encompassed such conduct. Whether a governmental body's actions are comprehended within the powers granted to it by the legislature is, of course, a determination which can be made only under the specific facts in each case. A district judge's inquiry on this point should be broad enough to include all evidence which might show the scope of legislative intent.

*Id.* at 434–35.

The United States Supreme Court affirmed the decision by the Fifth Circuit. *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 391, 98 S.Ct. 1123, 1125, 55 L.Ed.2d 364 (1978). In so doing, Justice Brennan, in the plurality opinion,[10] rejected the plaintiffs' contention that their status as municipalities required an auto-

---

9. The Court's decision in *Cantor*, while analogous to allegedly anticompetitive actions by a state or local government entity, concerned the extent to which anticompetitive activity by purely private parties is exempt from liability under the federal antitrust laws. *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S.

389, 410–11 n.40, 98 S.Ct. 1123, 1135–36, 55 L.Ed.2d 364 (1978).

10. Justice Brennan delivered the opinion of the Court in which Chief Justice Burger and Justices Marshall, Powell, and Stevens joined. *Id.* at 391–408, 98 S.Ct. at 1125–34. Justice Brennan also delivered an opinion in which Justices

matic application of the state action exemption. *Id.* at 403, 98 S.Ct. at 1131. Rather, relying upon *Parker* and its progeny, Justice Brennan determined that the state action exemption applies to conduct engaged in "as an act of government by the State as sovereign, or, by its subdivisions, pursuant to state policy to displace competition with regulation or monopoly public service." *Id.* at 413, 98 S.Ct. at 1137. According to Justice Brennan, this application of the state action exemption preserves to the states their freedom under our dual system of federalism to use their municipalities to administer state regulatory policies free of the inhibitions of the federal antitrust laws without at the same time permitting purely parochial interests to disrupt the nation's free-market goals. *Id.* at 415–16, 98 S.Ct. at 1138.

In a concurring opinion, Chief Justice Burger agreed with the plurality opinion that the threshold inquiry by the district court in determining whether the state action exemption applies is whether the anticompetitive activity is required by the state acting as sovereign. *Id.* at 425, 98 S.Ct. at 1143 (Burger, C.J., concurring). Chief Justice Burger, however, would require the district court to make a supplemental inquiry as to whether the implied exemption from federal antitrust law liability "was necessary in order to make the regulatory Act work, 'and even then only to the minimum extent necessary.'" *Id.* at 426, 98 S.Ct. at 1143, *quoting Cantor v. Detroit Edison Co.*, 428 U.S. 579, 597, 96 S.Ct. 3110, 3121, 49 L.Ed.2d 1141 (1976).

In *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), the Court rejected the argument that the state

action exemption applies to the State of California's wine pricing system. *Id.* at 105–06, 100 S.Ct. at 943–44. In so doing, the *Midcal* Court determined that there are two standards for the state action exemption: the challenged restraint must be "clearly articulated and affirmatively expressed as state policy" and the policy must be "actively supervised by the State itself". *Id.* at 105, 100 S.Ct. at 943, *quoting City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978) (opinion of Brennan, J.). The *Midcal* Court concluded that California's wine pricing system satisfied the first standard since a state statute created the price maintenance program. 445 U.S. at 105, 100 S.Ct. at 943. The Court, however, concluded that the pricing system did not meet the second standard since the state merely enforces the prices set by private parties and does not establish or review the price schedules nor monitor the program in any way. *Id.* at 105–06, 100 S.Ct. at 943–44. The Court in *Midcal* contrasted the California program with the approach of other states that completely control the distribution of liquor within their boundaries and thus come within the state action exemption. *Id.* at 106 n.9, 100 S.Ct. at 943.

Since these pronouncements by the United States Supreme Court regarding a municipality's liability under the federal antitrust laws, several federal courts of appeals and district courts have applied the state action exemption to various allegedly anticompetitive actions by municipalities and other state instrumentalities. Depending upon the parties and activities involved, these courts have applied [11] or refused to apply [12] the state action exemption.

Marshall, Powell, and Stevens joined. *Id.* at 408–17, 98 S.Ct. at 1134–39 (opinion of Brennan, J.). Justice Marshall also filed a concurring opinion. *Id.* at 417–18, 98 S.Ct. at 1138–39 (Marshall, J., concurring). Chief Justice Burger filed an opinion concurring in part and concurring in the judgment. *Id.* at 418–26, 98 S.Ct. at 1139–44 (Burger, C.J., concurring). Justice Stewart filed a dissenting opinion in which Justices White and Rehnquist joined and in which Justice Blackmun joined in all but one portion. *Id.* at 426–41, 98 S.Ct. at 1143–51 (Stewart, J.,

dissenting). Justice Blackmun then filed a separate dissenting opinion. *Id.* at 441–43, 98 S.Ct. at 1151–52 (Blackmun, J., dissenting).

11. In the following cases, the courts have applied the state action exemption to allegedly anticompetitive actions by municipalities and other local government entities: *Community Communications Co. v. City of Boulder*, 630 F.2d 704, 708 (10th Cir. 1980), *cert. granted*,

12. See note 12 on page 773.

The United States Court of Appeals for the Seventh Circuit addressed the state action exemption issue in *Kurek v. Pleasure Driveway & Park District*, 557 F.2d 580 (7th Cir. 1977). In *Kurek*, the plaintiffs, professional golf players, filed suit against the Pleasure Driveway and Park District of Peoria, Illinois ("the park district"), a local government entity created pursuant to the Illinois Constitution; the president and board of trustees of the park district; members of the administrative staff of the district; Golf Shop Management, Inc.

("GSM"); and GSM's sole incorporator. *Id.* at 585.

Assuming the truth of the complaint's well-pleaded facts as required under a motion to dismiss, the Seventh Circuit set forth the following facts. *Id.* at 584. The plaintiffs were employed by the park district as golf course managers, greenskeepers, and golf professionals at the park district's golf courses. *Id.* at 585. Each plaintiff was granted a concession to oper-

—— U.S. ——, 101 S.Ct. 1756, 68 L.Ed.2d 236 (1981) (state action exemption applies to city ordinance placing a three-month moratorium on plaintiff's cable television company from further solicitation of business), *but see* 630 F.2d at 709 (Markey, C.J., dissenting); *Princeton Community Phone Book, Inc. v. Bate*, 582 F.2d 706, 720 (3d Cir. 1978), *cert. denied*, 439 U.S. 966, 99 S.Ct. 454, 58 L.Ed.2d 424 (1978) (action by state advisory committee on professional ethics in regulating publicity by lawyers within state action exemption); *Pueblo Aircraft Service, Inc. v. City of Pueblo*, 498 F.Supp. 1205, 1210 (D.Colo.1980) (city's dealings with fixed base operators at city airport within state action exemption); *Highfield Water Co. v. Public Service Commission*, 488 F.Supp. 1176, 1190 (D.Md.1980) (state and local agencies' actions in acquiring water system within state action exemption); *Glenwillow Landfill, Inc. v. City of Akron*, 485 F.Supp. 671, 677 (N.D.Ohio 1979) (state action exemption applied to city's action in establishing waste disposal system pursuant to state law); *Crocker v. Padnos*, 483 F.Supp. 229, 232 (D.Mass.1980) (mayor and state governmental body within state action exemption regarding allegedly anticompetitive actions in awarding transportation contract); *Caribe Trailer Systems, Inc. v. Puerto Rico Maritime Shipping Authority*, 475 F.Supp. 711, 722 (D.D.C.1979) (state's mandate to shipping authority to control shipping lines between Puerto Rico and United States within state action exemption); *Shrader v. Horton*, 471 F.Supp. 1236, 1241 (W.D.Va.1979), *aff'd*, 626 F.2d 1163 (4th Cir. 1980) (city ordinance establishing mandatory water system hook-up within state action exemption); *Virginia Academy v. Blue Shield of Virginia*, 469 F.Supp. 552, 557–58 (E.D.Va. 1979), *modified*, 624 F.2d 476 (4th Cir. 1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981) (state law which requires two insurance companies to provide services for state employees mandates that the state action exemption apply to the joint activities of the insurance companies).

**12.** In the following cases, the courts refused to apply the state action exemption to allegedly

anticompetitive actions by municipalities and other local government entities: *Guthrie v. Genesee County*, 494 F.Supp. 950, 956 (W.D.N.Y.1980) (state action exemption inapplicable to action against county for allegedly anticompetitive conduct in eliminating competition at county airport since state statute empowering county to operate airport does not contemplate or require county to displace competition); *Pinehurst Airlines, Inc. v. Resort Air Services, Inc.*, 476 F.Supp. 543, 551 (M.D.N.C.1979) (state action exemption inapplicable to antitrust suit against county board for allegedly anticompetitive action in operation of airport); *Mason City Center Associates v. City of Mason City*, 468 F.Supp. 737, 743 (N.D.Iowa 1979) (state action exemption inapplicable to allegedly anticompetitive agreement between city and private developer to use zoning ordinance to develop shopping center upon the express condition that city prevent any other shopping center from being constructed); *Woolen v. Surtran Taxicabs, Inc.*, 461 F.Supp. 1025, 1033 (N.D.Tex.1978) (state action exemption inapplicable to cities' ordinances establishing sole transportation company for ground transportation at airport since state statutes authorizing municipalities to establish and operate airports do not contemplate the implementation of anticompetitive activities by municipalities in the operation of airports); *Cedar-Riverside Associates, Inc. v. United States*, 459 F.Supp. 1290, 1297–98 (D.Minn.1978), *aff'd on other grounds*, 606 F.2d 254 (8th Cir. 1979) (state action exemption applicable to actions by city and city housing authority regarding actions taken directly pursuant to state law but inapplicable for the purpose of motion to dismiss regarding allegations that city and city housing authority exceeded the scope of activities contemplated by state legislature); *Star Lines, Ltd. v. Puerto Rico Maritime Shipping Authority*, 451 F.Supp. 157, 168 (S.D.N.Y.1978) (state maritime authority's action in eliminating competition in shipping not mandated by the state nor pursuant to government policy to displace competition and thus state action exemption inapplicable).

ate a golf "pro shop" at his respective golf course. *Id.* The plaintiffs' pro shops constituted the entire public market for high quality professional golf equipment in the Peoria area. *Id.* Over a period of years, the plaintiffs had paid small concession fees to the park district. *Id.* In 1973, the park district apparently decided to obtain greater revenues from its golf course pro shops. *Id.* The park district thus renegotiated the terms of the concession agreements for calendar year 1973 with the result that the plaintiffs agreed to pay one and one-half percent of their gross receipts as a concession fee. *Id.*

The plaintiffs alleged that in 1973 GSM and the park district board and staff agreed that GSM would make an economically unrealistic "sham" proposal, which would not be performed, for the concession rights at the golf courses. *Id.* The plaintiffs also alleged that the public bidding specifications were tailored and advertised exclusively for the sham proposal and that GSM subsequently formalized its proposal as a bid. *Id.* The park district never held the meeting scheduled for the purpose of acting upon the bids. *Id.* The plaintiffs alleged that the park district used the GSM proposal to coerce the plaintiffs into a price raising and fixing scheme regarding the golf course services and a concession fee consisting of five percent of the gross receipts of the golf courses. *Id.* at 586. The plaintiffs further alleged that, as a result of the defendants' wrongful conduct, the golfing public of Peoria, Illinois lost the benefits of competition and suffered increased prices without any corresponding governmental or other benefits. *Id.*

The district court in *Kurek* dismissed count I of the complaint which alleged violations of the antitrust laws on the authori-

ty of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).[13] The United States Court of Appeals for the Seventh Circuit reversed the district court on the issue of antitrust law immunity. 557 F.2d at 591. In so doing, the court first set forth the standard which must be applied to determine whether count I of the complaint in *Kurek* failed to allege a cause of action under the antitrust laws: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 586, *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).[14]

The Seventh Circuit then reviewed the state action exemption as developed by the United States Supreme Court up to *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976).[15] The Seventh Circuit stated that "*Cantor* and *Goldfarb* demonstrate beyond serious questioning that the Supreme Court is not inclined any longer, if it ever was, to accept superficial and mechanical application of a *Parker*-based 'rule' that antitrust inquiry ends upon such a finding of governmental actions or laws being involved." 557 F.2d at 589. Rather, the Seventh Circuit concluded that federal antitrust actions may be maintained against state agencies unless the challenged conduct is "compelled by direction of the State as sovereign". *Id.* at 590, *quoting Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975). Moreover, where the challenged action is by a subordinate unit of state government, the *Kurek* court deter-

---

**13.** The *Noerr-Pennington* doctrine provides antitrust immunity for individuals who make a genuine effort to influence legislation and public officials even though the individuals intend to eliminate competition by so doing. The doctrine is inapplicable under the facts of the present case. *See Kurek v. Pleasure Driveway & Park District*, 557 F.2d 580, 592–94 (7th Cir. 1977).

**14.** In so doing, the *Kurek* court noted that "of course, we intimate no views whatsoever on the likelihood that plaintiffs will be able to prove the allegations of the complaint." *Id.* at 586.

**15.** *Kurek* was decided prior to *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978).

mined that an application of the state action exemption is not automatic. 557 F.2d at 590. Rather, according to the Seventh Circuit, a subordinate governmental unit is immune from antitrust law liability only where the unit acts pursuant to the state's express or implied authorization or command. *Id.* The *Kurek* court further concluded that an adequate state mandate for anticompetitive activities of subordinate governmental units may be demonstrated by explicit language in state statutes or may be inferred from the nature of the powers and duties given to a particular government entity and that all evidence which might show the scope of legislative intent should be considered. *Id., citing City of Lafayette v. Louisiana Power & Light Co.*, 532 F.2d 431, 434–35 (5th Cir. 1976).[16]

The Seventh Circuit then reviewed the statutory authority granted to the park district by the State of Illinois regarding the maintenance of golf courses. 557 F.2d at 590. Illinois law empowers the park districts to construct, equip, and maintain golf courses as well as facilities necessary to the golf courses; to contract in furtherance of corporate purposes; and to lease real estate. *Id.* (citations omitted). Thus, the *Kurek* court concluded that the Illinois statutes fully authorize the park districts to operate pro shops at its golf courses or to make contracts and leases with others to operate such shops. The Seventh Circuit, however, further concluded:

> Nothing in the Illinois statutory provisions governing park districts even remotely suggests that Illinois has authorized, let alone compelled, park districts to attempt to enrich themselves by coercing horizontal retail competitors operating under concession licenses to fix retail prices in what would otherwise be plain violation of the Sherman Act.... That

the Park District's conduct concerned its golf courses and involved its statutory powers to contract and/or to lease surely does not convert Illinois' grant of such powers into state authorization or mandate to use them to force private competitors to violate the antitrust laws. *Id.* at 590–91. The Seventh Circuit stated that the case for applying the state action exemption would be stronger if the complaint in *Kurek* only alleged that the park district had substantially reduced competition by operating the pro shops itself, by foreclosing others from so operating, or by contracting with a single concessionaire for the operation of the pro shops. *Id.*

Regarding the governmental officer defendants, the *Kurek* court found that, where the activities of a governmental unit are outside the scope of the antitrust laws, the officials charged with performing those activities enjoy the same protections from liability. *Id.* at 591 (citations omitted). The court went on to note, however, that an official's ultra vires or bad faith actions may vitiate the immunity defense. *Id.*[17]

The Seventh Circuit's decision was appealed to the United States Supreme Court where it was vacated and remanded for reconsideration in light of *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364; *Pleasure Driveway and Park District v. Kurek*, 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978). Upon reconsideration, the Seventh Circuit affirmed its decision as to the antitrust issues. *Kurek v. Pleasure Driveway & Park District*, 583 F.2d 378 (7th Cir. 1978) (per curiam), *cert. denied*, 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979). In so doing, the Seventh Circuit concluded that its prior decision correctly anticipated the Supreme Court's holding in *City of Lafayette*. 583 F.2d at 379.[18]

---

**16.** As noted by the Seventh Circuit, the United States Supreme Court had granted *certiorari* in *City of Lafayette* at the time of the *Kurek* decision.

**17.** Since the parties in *Kurek* did not present any argument regarding individual antitrust im-

munity, the *Kurek* court declined to decide this issue. *Id.*

**18.** Similarly, in *Whitworth v. Perkins*, 559 F.2d 378 (5th Cir. 1977), the plaintiff, owner of a food market, filed suit against a municipality, the individual aldermen of the municipality, and three private Texas corporations. *Id.* at

Under the standard set forth by the Seventh Circuit in *Kurek*, the court in the present case must assume the truth of the well-pleaded facts contained in the amended complaint for the purpose of a motion to dismiss for failure to state a claim. In counts I and II of the amended complaint, Schiessle alleges that the village, the mayor, and board of trustees of the village conspired with certain private developers to commit violations of the federal antitrust laws by adopting a "sham" redevelopment plan for the village pursuant to which Schiessle's property was to be taken by eminent domain for the later use and benefit of the private developers. Schiessle further alleges that certain other property in the village—including property owned by the mayor—was not included in the sham redevelopment plan.

The antitrust allegations in counts I and II of the amended complaint cannot be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. In so construing a motion to dismiss for failure to state a claim, the court intimates no views whatsoever on the likelihood that the plaintiff will be able to prove the allegations in the complaint nor on the outcome of any motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 after discovery is taken regarding the antitrust allegations.

■ Applying the law regarding a municipality's liability under the antitrust laws as set forth by *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), and *Kurek v. Pleasure Driveway & Park District*, 557 F.2d 580 (7th Cir. 1977), to the present case, the court concludes that counts I and II of the amended complaint cannot be dismissed for failure to state a claim. As in *Kurek*, the Illinois statutes which permit a municipality to redevelop property within its boundaries do not in any way suggest that the State of Illinois has authorized, let alone compelled, a municipality and its officials to violate the federal antitrust laws by passing a "sham" redevelopment plan to further a conspiracy with private developers. *See* Ill.Const. art. 7, § 6(i) (Illinois home rule units have exclusive power to legislate on any matter pertaining to their "government and affairs" not specifically preempted by state statute);· Ill.Rev.Stat. ch. 24, § 11–74.4–2 (1979) (Illinois Real Property Tax Increment Allocation Redevelopment Act states in general terms that blighted areas should be redeveloped). Thus, the alleged anticompetitive actions by the defendants in this case do not come within the state action exemption as an act of the government by the state a sovereign or, by its subdivisions, pursuant to state policy to displace competition with regulation or monopoly public service. *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 413, 98 S.Ct. 1123, 1137, 55 L.Ed.2d 364 (1978); *Kurek v. Pleasure Driveway & Park District*, 557 F.2d 580, 590 (7th Cir. 1977), *vacated and remanded*, 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978), *affirmed as to the antitrust issues*, 583 F.2d 378 (7th Cir. 1978) (per curiam), *cert. denied*, 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979). Nor does the anticompetitive conduct alleged in this case come within the "two standard" test set forth in *California Retail Liquor Dealers Association v. Midcal*

379. The plaintiff alleged that the defendants enacted a zoning ordinance for the precise purpose of excluding him from the sale of liquor on his property. *Id.* The district court granted the defendants' motion for summary judgment based upon the state action exemption. *See id.* at 380. The United States Court of Appeals for the Fifth Circuit reversed. *Id.* at 379. In so doing, the court remanded the case to the district court for the same analysis that the Fifth Circuit had set forth in *City of Lafayette v. Louisiana Power & Light Co.*, 532 F.2d 431, 434

(5th Cir. 1976), which was subsequently affirmed by the United States Supreme Court. The Fifth Circuit concluded that, based upon the pleadings in *Whitworth* and the law regarding the state action exemption, the court could not conclude that, "at this early stage of the proceedings", the plaintiff could prove no set of facts in support of his claim for relief. 559 F.2d at 382, *quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

*Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980) since the alleged activity by the defendants is not "clearly articulated and affirmatively expressed as state policy" and the policy is not "actively supervised" by the state itself. Therefore, the court concludes that, for the purpose of a motion to dismiss, the state action exemption is inapplicable to the allegations contained in counts I and II of the amended complaint. Accordingly, the motion to dismiss counts I and II of the amended complaint for failure to state a claim is denied.[19]

 While counts I and II of the amended complaint survive a motion to dismiss for failure to state a claim, the court's inquiry also must determine whether abstention is appropriate regarding counts I and II. While counts I and II invoke the jurisdiction of this court pursuant to the federal antitrust laws, the plaintiff seeks relief in part in the form of an injunction enjoining the defendants from continuing their allegedly illegal, anticompetitive activities. Such relief could include an injunction enjoining the state court condemnation proceeding. Thus, to the extent that counts I and II seek to enjoin or otherwise interfere with the pending state court condemnation proceeding, this court abstains under the *Younger* abstention doctrine.[20]

Accordingly, the defendants' motion to abstain and dismiss is granted as to counts III through XI of the amended complaint. The defendants' motion to dismiss counts I and II of the amended complaint for failure to state a claim is denied. The defendants' motion to abstain and dismiss is granted as to the portion of counts I and II of the amended complaint which seek to enjoin or otherwise interfere with the pending state court condemnation proceeding.

It is so ordered.[21]

---

**19.** The defendants also contend that the individual members of the village board are entitled to legislative immunity under 42 U.S.C. § 1983 (1978). Since the court abstains as to the section 1983 portion of the complaint, the court will not address this issue.

**20.** In that counts I and II of the amended complaint do not involve allegedly unconstitutional state action with unsettled questions of state law, the court concludes that *Pullman* abstention would be inappropriate in this case. Moreover, jurisdiction of federal antitrust suits is exclusively in the federal courts. *See* 15 U.S.C. §§ 15, 26 (1978); 28 U.S.C. § 1337 (1978).

**21.** The court reserves on the pending motion to disqualify counsel and the Swansons' motion to dismiss pursuant to Federal Rule of Civil Procedure 11.